EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sol María Vázquez Ortiz<br><br>    Peticionaria<br><br>              v.<br><br>Juan M. López Hernández<br><br>    Recurrido | Certiorari<br><br>2003 TSPR 173<br><br>160 DPR _____ |

Número del Caso: CC-2002-689


Fecha: 25 de noviembre de 2003


Tribunal de Circuito de Apelaciones:
                    Circuito Regional VI


Juez Ponente:
                    Hon. Jorge L. Escribano Medina

Abogados de la Parte Peticionaria:
                    Lcdo. Rafael Torres Rivera
                    Lcdo. Víctor González Ortiz
                    Lcdo. Epifanio Contreras Elías
                    Lcda. Ana T. Ramírez Padilla

Abogado de la Parte Recurrida:
                    Lcdo. José R. Rodríguez Rivera



Materia: Pensión Alimentaria




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Sol María Vázquez Ortiz

    Peticionaria

       v.

                              CC-2002-689

Juan M. López Hernández

    Recurrido




Opinión del Tribunal emitida por la Jueza Asociada señora Naveira de Rodón.




San Juan, Puerto Rico a 25 de noviembre de 2003


Aunque los hechos que dan lugar a las controversias que nos ocupan son relativamente sencillos, los mismos son representativos de una de las áreas del derecho más problemáticas en la administración de la justicia por razón del gran número de asuntos que genera ante los tribunales y lo emocionalmente cargados que éstos suelen estar: **pensiones alimentarias para los hijos menores de edad.** *Valencia, Ex parte*, 116 D.P.R. 909, 910 (1986).

I

En 1997 la Sra. Sol María Vázquez Ortiz solicitó ante el Tribunal de Primera Instancia, Sala Superior de Aibonito, alimentos para su hija, procreada con el Sr. Juan López Hernández el 28 de junio de 1986.[1] La vista fue celebrada en septiembre de 1997 y el 4 de diciembre de 1997, el tribunal emitió una Resolución mediante la cual le impuso al señor López Hernández una pensión alimentaria de $1,435 mensuales. Para ese entonces éste era un comerciante con al menos una tienda de zapatos en el pueblo de Guayama. La prueba presentada consistió, además de los testimonios vertidos en sala, en las Planillas de Información Personal y Económica (en adelante PIPE) que habían sido sometidas bajo juramento por la señora Vázquez Ortiz, el señor López Hernández y su esposa, la Sra. Jeannette Lambert Rosado.[2] Inconforme con la cuantía impuesta, López Hernández solicitó reconsideración, alegando, entre otras cosas, que debido a que se había acogido a la Ley de Quiebras, lo cual había declarado en la PIPE sometida, no tenía el dinero disponible para pagar la pensión fijada. La solicitud de reconsideración fue declarada no ha lugar el 19 de febrero de 1998 y copia de su notificación fue archivada en autos el 24 de febrero de 1998.

---

[1] Véase, Planilla de Información Personal y Económica firmada por el Sr. Juan M. López Hernández el 19 de agosto de 1997.
[2] El señor López Hernández y la señora Lambert Rosado se casaron el 2 de abril de 1987.

Posteriormente, el 9 marzo de 1998 el señor López Hernández presentó una moción al amparo de la Regla 49.2 de Procedimiento Civil alegando, en esencia, que la pensión fijada era "excesiva" pues el tribunal erróneamente determinó que él era dueño de dos (2) tiendas de zapatos cuando alegadamente sólo tenía una (1), siendo la otra propiedad de su hermano del mismo nombre. Igualmente, sostuvo, que erró el tribunal al considerar los ingresos de la sociedad legal de gananciales compuesta por éste y su esposa, la señora Lambert Rosado, sin que ésta hubiese sido debidamente emplazada. Dicha moción fue denegada por el tribunal el 7 de diciembre de 1998 y notificada a las partes el 8 de febrero de 1999.

El 2 de marzo de 1999, habiéndose acumulado la pensión fijada a una deuda de más de $31,000, el señor López Hernández fue encarcelado. Días más tarde, a través de una estipulación entre las partes en la que también intervino una examinadora de pensiones alimentarias como parte de una vista celebrada ante el Tribunal de Primera Instancia, Sala Superior de Mayagüez, para rebajar la pensión asignada, ésta fue reducida a $164 mensuales, siendo la misma aprobada por el tribunal.

Así las cosas, la esposa del señor López Hernández presentó una moción alegando, nuevamente, que era parte indispensable a tenor con la Regla 16.1 de Procedimiento

Civil y que el tribunal no había adquirido jurisdicción sobre su persona.

Mediante Resolución de 19 de abril de 2002, el Tribunal de Primera Instancia, Sala Superior de Guayama, resolvió que al momento del Tribunal de Primera Instancia, Sala Superior de Aibonito, imponer la pensión en la Resolución que emitiera el 4 de diciembre de 1997, lo hizo sin tener jurisdicción sobre la señora Lambert Rosado, esposa del señor López Hernández y la sociedad legal de gananciales compuesta por éstos, ya que éstas nunca fueron emplazadas. El foro de instancia expresó que "aunque la Sentencia era final, la parte que solicita se deje sin efecto la Resolución en cuestión, tiene derecho a solicitar en un pleito civil independiente la nulidad de Sentencia[.] Regla 49.2(a)(b) de Procedimiento Civil." Añadió que "[l]a deuda que se ha acumulado en el caso, es la relacionada a la pensión alimentaria de esa Resolución, pues la parte siguió depositando lo que pagaba antes de esa Resolución y la que luego fijó la Sala de Mayagüez que eran básicamente iguales." Señaló, finalmente, que "[a]nte la oposición de la alimentista este Tribunal no puede dejar sin efecto la Resolución. Sin embargo, la parte afectada por la misma puede llevar una acción independiente para dejarla sin efecto." En consecuencia, decidió congelar la deuda acumulada por concepto de alimentos hasta tanto se dilucidara en

acción independiente la validez de la pensión alimentaria fijada mediante la Resolución emitida el 4 de diciembre de 1997. Dispuso, sin embargo, que "[la] parte deberá informar en un tiempo razonable la radicación de la acción. Si no la radica, así lo informarán para dejar sin efecto la congelación de la deuda."

El Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) confirmó la resolución emitida por el tribunal de instancia, manteniendo en suspenso la deuda de alimentos hasta tanto se dilucidara la validez de la misma en un pleito independiente. Además, autorizó a dicho tribunal a adjudicar el relevo de sentencia solicitado por el recurrido. Finalmente, resolvió, contrario al foro de instancia, que los tribunales sí habían adquirido jurisdicción sobre la sociedad de gananciales y la persona de la esposa del recurrido quienes se habían sometido voluntariamente desde el inicio del pleito a través de una planilla informativa juramentada.

Inconforme, la señora Vázquez Ortiz acudió ante nos. Mediante Resolución de 25 de octubre de 2002, le concedimos a la parte recurrida un término para que mostrara causa por la cual no debíamos revocar la determinación del Tribunal de Circuito. Las partes comparecieron y con el beneficio de sus argumentos resolvemos sin ulterior trámite.

## II

El primer asunto a dilucidar se circunscribe a determinar si al momento en que el Tribunal de Primera Instancia, Sala de Aibonito, dictó su Resolución de 4 de diciembre de 1997, había adquirido jurisdicción sobre la persona de la esposa del recurrido y la sociedad legal de gananciales compuesta por éstos. Esto a pesar de que ninguna de éstas fue emplazada conforme dispone la Regla 4 de Procedimiento Civil. 32 L.P.R.A. Ap. III.

El emplazamiento es la notificación formal a la que todo demandado, en virtud de las garantías mínimas del debido proceso de ley, tiene derecho cuando existe en su contra una reclamación judicial para que, de así desearlo, comparezca a defenderse. *Qume Caribe, Inc.* v. *Srio. de Hacienda*, Op. de 30 de marzo de 2001, 153 D.P.R.___ (2001), 2001 JTS 41, pág. 1013. *First Bank of P.R.* v. *Inmob. Nac., Inc.*, 144 D.P.R. 901 (1998). Ahora bien, un demandado renuncia al requisito de la notificación formal cuando se somete voluntariamente a la jurisdicción del Tribunal. Esto lo puede hacer al cumplir voluntariamente con las órdenes del tribunal y, a solicitud de éste, presentar documentos pertinentes dirigidos a dilucidar la reclamación incoada por la parte demandante en su contra.[3] En nuestro ordenamiento procesal esto se conoce como sumisión voluntaria. En

*Qume Caribe, Inc.* v. *Srio. De Hacienda*, supra, expresamos que "[l]a figura de la sumisión consiste en que una parte comparece voluntariamente y realiza algún acto sustancial que la constituya parte en el pleito, sometiéndose así a la jurisdicción del Tribunal." Es decir, la comparecencia voluntaria de la parte demandada suple la omisión del emplazamiento y es suficiente bajo las garantías del debido proceso de ley, para que el tribunal adquiera jurisdicción sobre la persona.

Respecto a la sociedad legal de gananciales, el Art. 91 del Código Civil, 31 L.P.R.A. sec. 284, en lo pertinente, dispone que, salvo estipulación en contrario, "[a]mbos cónyuges serán los administradores de los bienes de la sociedad conyugal." Esto significa que "cualquiera de [ellos] podrá representar legalmente a la sociedad conyugal." Art. 93 del Código Civil, 31 L.P.R.A. sec. 286. Dicho artículo también dispone que "[c]ualquier acto de administración unilateral de uno de los cónyuges obligará a la sociedad legal de gananciales y se presumirá válido a todos los efectos legales". *Id.*

En *Urbino* v. *San Juan Racing Assoc., Inc.*, 141 D.P.R. 210, 214 (1996), expresamos que con las enmiendas de 1976 al Código Civil, "la Asamblea Legislativa equiparó la facultad de ambos cónyuges para administrar la sociedad legal de gananciales e incorporó el

---

[3] Cabe señalar que la notificación formal, al igual que la mayoría de los derechos, es renunciable. *Qume*

principio de coadministración y representación legal. [Cita omitida.] **Desde entonces, individualmente, tanto el esposo como la esposa tienen capacidad de jure para representar a la sociedad de gananciales en los tribunales"**. (Énfasis nuestro y en el original.)

En la Resolución que emitiera el Tribunal de Primera Instancia, Sala Superior de Aibonito, de 4 de diciembre de 1997, surge que a la vista de fijación de pensión alimentaria celebrada el 30 de septiembre de 1997, compareció la señora Vázquez Ortiz, demandante peticionaria, representada por abogado y el recurrido, señor López Hernández, por derecho propio. Cabe señalar que desde el 1990, tanto el señor López Hernández como la sociedad legal de gananciales compuesta por éste y la señora Lambert, están sometidos a la jurisdicción del Tribunal de Primera Instancia. De los documentos que obran en autos surge que el 27 de septiembre de 1990, la Sala Superior de Aibonito del Tribunal de Primera Instancia, dictó sentencia aprobando una estipulación mediante la cual el recurrido acordó pagar a favor de su hija una pensión alimentaria de $40.00 mensuales. En 1997 éste, no tan sólo compareció voluntariamente al tribunal, sino que también lo hizo en nombre de la sociedad de bienes gananciales al presentar en la PIPE y la Planilla de Contribución sobre Ingresos, los ingresos de dicha sociedad.

_Caribe, Inc._ v. _Srio. de Hacienda_, supra, pág. 1013.    8

Con relación a la señora Lambert Rosado, esposa del recurrido, surge lo siguiente:

> Se concedieron en vista cinco (5) días al demandado [recurrido] para someter Planilla de Contribución sobre Ingresos o con sello de radicado en Hacienda; Planilla de Información Económica con ingreso mensual de las dos tiendas y con ingreso de la sociedad legal de gananciales con gastos detallados separados de las tiendas de la sociedad legal de gananciales; proveer un talonario de pago de esposa del demandado y copia de [la] sentencia de quiebra de plan de quiebra.

> La tercera Planilla es de la esposa del demandado, Jeannette Lambert Rosado, juramentada el 6 de octubre de 1997. Inciso 3, Salario $10,764 anual, como Secretaria en DACO, con deducciones mensual [sic] de $266.32 de Contribuciones, $653.13 de Retiro, $603.81 de Seguro Social, 37.5 horas semanal.

> Radicó junto con la Planilla de Información, copia de la Planilla de Contribuciones sin sellos, en la que se informa al Departamento de Hacienda un ingreso de $10,764 en la página 1, y contribuciones retenidas $210, en ganancia o pérdida atribuible a industria o negocio $7,796, total ingreso bruto $18,560. Firman la Planilla Juan M. López y Jeannette Lambert.

Al analizar lo expresado por el foro de instancia junto a los documentos que obran en autos, podemos colegir que al momento de dictarse la Resolución de 4 de diciembre de 1997, el tribunal había adquirido jurisdicción también sobre la persona de la señora Lambert Rosado,

esposa del señor López Hernández.

En cuanto a la sociedad de bienes gananciales, en *Urbino v. San Juan Racing Assoc., Inc.*, supra, a la pág. 215, señalamos que la igualdad jurídica entre los cónyuges, el principio de coadministración y la capacidad legal representativa, requieren el reconocer plenamente que un cónyuge tiene la capacidad legal para reclamar daños gananciales sin tener que incluir o mencionar en la demanda la sociedad de gananciales y al otro cónyuge. Por lo que cada uno tiene capacidad de jure para representar la sociedad legal de gananciales en los tribunales y cualesquiera de ellos puede someter a la jurisdicción del tribunal a la sociedad de bienes gananciales.

Además, es menester destacar que *"**cualquier nueva sociedad de gananciales que se cree será responsable del sustento y alimentos de los hijos menores de edad habidos en un matrimonio de alguno de sus componentes.**"* (Énfasis nuestro y citas omitidas.) *López v. Rodríguez*, 121 D.P.R. 23, 31 (1988). ***Y, salvaguardando la igualdad de los hijos, dichas expresiones también son aplicables a los hijos fruto de una relación consensual.***

Así, pues, el tribunal deberá tomar en cuenta la capacidad económica de la nueva sociedad conyugal al momento de fijar una pensión alimentaria para los menores.

III

Respecto a la falta de jurisdicción sobre la persona, una vez se le somete al foro de instancia el planteamiento, y éste lo resuelve, sólo se podrá cuestionar la corrección de esta determinación dentro del caso en que se hizo el planteamiento y mediante los mecanismos procesales de reconsideración, revisión y/o relevo de sentencia que proveen las Reglas de Procedimiento Civil. En otras palabras, no se puede presentar un pleito independiente para corregir un supuesto error en la determinación del foro de instancia sobre su jurisdicción sobre la persona de los demandados.

En el caso de autos, los demandados, en 1998, mediante presentación de una moción de relevo al amparo de la Regla 49.2, supra, hicieron el planteamiento de falta de jurisdicción sobre la persona de la esposa del señor López Hernández y la sociedad de bienes gananciales compuesta por ambos. Éste fue resuelto en su contra por el foro de instancia el 7 de diciembre de 1998. Dicha Resolución se notificó el 8 de febrero. Esta Resolución no fue revisada. El 21 de febrero de 2002, tres (3) años más tarde, volvieron a hacerle al foro de instancia el mismo planteamiento. En esta ocasión adujeron además que eran partes indispensables. A tenor con la normas de derecho antes expuestas no procedía el que se cuestionase nuevamente la alegada

falta de jurisdicción sobre la señora Lambert Rosado y la sociedad de bienes gananciales compuesta por ésta y el señor López Hernández.

IV

Réstanos examinar la corrección de la determinación del Tribunal de Circuito respecto a la autorización que otorga al foro de instancia para que, a través del mecanismo de relevo de sentencia, libere al recurrido de la resolución que emitiera el Tribunal de Primera Instancia, Sala Superior de Aibonito, el 4 de diciembre de 1997 en la que fue fijada la pensión alimentaria mensual de $1,435. También lo autorizó "a re-adjudicar con efecto retroactivo la cuantía acumulada, si alguna, conforme al resultado de su evaluación".

El Tribunal de Circuito entiende que dadas las circunstancias particulares del caso de autos, tales como: "(i) la orden de 19 de febrero de 1998, en la que un Juez distinto al que escuchó la prueba declaró no ha lugar la reconsideración a la Resolución previa del 4 de diciembre de 1997 que a todas luces es injusta [y]; (ii) la orden de 7 de diciembre de 1998 que sin vista ni proceso declaró no ha lugar la moción al amparo de la Regla 49.2 de las de Procedimiento Civil..." ameritan que el decreto que redujo la cantidad mensual por concepto de pensión alimentaria se aplique retroactivamente a la

resolución de 4 de diciembre de 1997, en la que se le impuso al señor López Hernández el pago de la suma de $1,435 mensual. La determinación del foro apelativo está basada en lo expresado por este Tribunal en *Valencia Ex parte*, supra, donde se contemplan situaciones en las que el foro de instancia retiene facultad para disponer distinto sobre la retroactividad de decretos judiciales de reducción de pensiones alimentarias. Veamos.

V

El mecanismo procesal que se tiene disponible para solicitarle al foro de instancia el relevo de los efectos de una sentencia está regulado por la Regla 49.2. Este remedio es uno extraordinario discrecional utilizado para impedir que tecnicismos y sofisticaciones frustren los fines de la justicia. Véase: Hernández Colón, *Práctica Jurídica de Puerto Rico*, Cap. 48, págs. 302-311, Michie, 1997. Véase, además, *Ortiz Serrano v. Ortiz Díaz*, 106 D.P.R. 445, 449 (1977). En *Dávila v. Hosp. San Miguel, Inc.*, 117 D.P.R. 807, 817 (1986), hicimos hincapié en que al presentarse una moción de relevo al amparo de la Regla 49.2, "el tribunal de[bía] hacer un análisis y balance racional y justiciero de todo el expediente del caso para determinar si bajo las circunstancias específicas del caso hubo '[e]rror, inadvertencia, sorpresa, o negligencia excusable' o 'no

sería equitativo que la sentencia continuara en vigor' o existe '[c]ualquier ... razón que justifique la concesión de remedio contra los efectos de una sentencia'." Hemos expresado, además, que la Regla 49.2, debe "interpretarse liberalmente y cualquier duda debe resolverse a favor del que solicita que se deje sin efecto una sentencia o anotación de rebeldía, a fin de que el proceso continúe y el caso pueda resolverse en sus méritos." *Díaz v. Tribunal Superior*, 93 D.P.R. 79, 87 (1966).

En armonía con lo anterior hemos resuelto que si se da alguna de las situaciones esbozadas en la Regla 49.2 se puede considerar una moción de reconsideración como una de relevo aún pasado el término para presentar una moción de reconsideración. Cabe destacar, sin embargo, que no se puede utilizar una moción de relevo como sustituto de un recurso de revisión o de una moción de reconsideración. *Pagán v. Alcalde Mun. de Cataño*, supra, pág. 328; *Olmedo Nazario v. Sueiro Jiménez*, 123 D.P.R. 294, 299 (1989).

Tomando en consideración las normas procesales previamente discutidas, pasemos a analizar la aplicación de éstas a los hechos particulares del caso de autos.

VI

En el presente caso la resolución fijando la pensión alimentaria fue dictada el 4 de diciembre de

1997 y notificada a las partes el 29 de enero de 1998. El señor López Hernández solicitó reconsideración. Ésta fue denegada el 19 de febrero de 1998, archivada en autos copia de su notificación el 24 de ese mes. El recurrido **no** solicitó revisión de dicha resolución ante el Tribunal de Circuito. En su lugar, optó por presentar una moción al amparo de la Regla 49.2 de Procedimiento Civil alegando que su esposa y la sociedad legal de gananciales no habían sido emplazadas, por lo cual solicitó el relevo de la sentencia. La referida moción fue denegada el 7 de diciembre de 1998, y archivada en autos copia de su notificación el 8 de febrero de 1999. El recurrido tampoco acudió al Tribunal de Circuito solicitando la revisión de esta Resolución.

Tres (3) años más tarde, es decir, el 21 de febrero de 2002, el señor López Hernández, su esposa y la sociedad legal de gananciales acudieron nuevamente ante el foro de instancia cuestionando la jurisdicción del tribunal sobre sus personas. Esta vez se basaron en la Regla 16.1. Solicitaron, otra vez, el relevo de la sentencia por no haber sido emplazadas ni su esposa ni la sociedad legal de gananciales siendo éstas, de acuerdo a su criterio, partes indispensables.

Como vemos, la Resolución fijando la pensión de $1,435 mensuales fue notificada a las partes el 29 de enero de 1998. No puede pretenderse ahora, que cuatro

(4) años más tarde el señor López Hernández, utilizando como subterfugio el mecanismo procesal de relevo de sentencia, pretenda que se revise la corrección de la misma, perpetuando de esa manera su incumplimiento con la obligación de prestarle alimentos a su hija menor. **"Intervenir 'a posteriori' con pensiones alimenticias ya 'devengadas' con [la] que esa madre [o padre cuenta] para poder cumplir con los compromisos contraídos... causaría una desastrosa e inaceptable inestabilidad... que no debe ser permitida."** (Énfasis nuestro.) *Valencia, Ex parte*, supra, a la pág. 916. Avalar el relevo solicitado por el señor Hernández López y autorizado por el Tribunal de Circuito "causaría un caos en las salas de relaciones de familia del tribunal de primera instancia -por cuanto tendría el efecto de fomentar aún más los atrasos en el pagos de las pensiones alimenticias- que no justifica permitirlo". *Id*. Además, va en contra de los mejores intereses de la menor. Por consiguiente, los errores que pueda haber cometido un tribunal, como regla general, deben ser corregidos mediante la oportuna presentación de una solicitud de reconsideración o una solicitud de revisión a un tribunal de mayor jerarquía.[4]

---

[4] Sobre el particular en *Figueroa v. Del Rosario*, 124 D.P.R. 121, 129 (1998), expresamos que por no ser los dictámenes de alimentos y de custodia estrictamente finales ni definitivos, las modificaciones a dichas determinaciones basadas en hechos y circunstancias ocurridos con posterioridad a haberse emitido el

Finalmente, aunque los alimentos se deben desde que se solicitan, como regla general, la fecha de efectividad de una rebaja en la pensión alimentaria deberá ser la del día en que se emite el dictamen autorizando la misma. Sin embargo, hay situaciones en las que el foro de instancia retiene facultad para disponer distinto sobre la retroactividad de decretos judiciales de reducción de pensiones alimentarias. Tales situaciones se refieren a casos extraordinarios de enfermedad, hospitalización, inconsciencia, y en general cualquier evento constitutivo de fuerza mayor o de caso fortuito. Para tal eventualidad hay soluciones más prácticas, tales como congelar temporeramente la vigencia de la pensión total o parcial durante el período de tiempo de que se trate. *Valencia Ex parte*, supra, a la pág. 914-915. Dentro de las circunstancias antes mencionadas, no está contemplado la utilización de una moción de relevo de sentencia como sustituto de una moción de reconsideración o un recurso de revisión.

Resuelto ya el asunto de la jurisdicción del tribunal de instancia sobre las partes y no habiéndose recurrido en tiempo de la Resolución fijando la cuantía que hoy el tribunal de instancia pretende revisar, erró

---

dictamen que se intenta modificar, pueden reclamarse en el mismo caso o en uno independiente. Sin embargo, a pesar de que se tiene esta alternativa y en aras de la economía procesal, en la mayoría de los casos no es recomendable que estas modificaciones se soliciten en un pleito independiente.

el Tribunal de Circuito al apoyarse en lo resuelto en *Valencia, Ex parte*, supra, para congelar la deuda de alimentos acumulada por el recurrido hasta tanto el tribunal de instancia evalúe y adjudique el relevo de sentencia solicitado por el alimentante a la luz de los hechos del caso y, a adjudicar con efecto retroactivo la cuantía acumulada si alguna, conforme al resultado de su evaluación.

## VII

Por todo lo antes expuesto, se expide el auto y se revoca sólo aquella parte de la sentencia que ordena al foro de instancia a adjudicar el relevo de sentencia. Así modificada se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.[5]

Miriam Naveira de Rodón
Jueza Asociada

---

[5] Nada impide que el foro de instancia estructure un plan de pago para la pensión devengada.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sol María Vázquez Ortiz

    Peticionaria

       v.

                              CC-2002-689

Juan M. López Hernández

    Recurrido

SENTENCIA

San Juan, Puerto Rico a 25 de noviembre de 2003

      Por los fundamentos expuestos en la Opinión que antecede, se expide el auto y se revoca sólo aquella parte de la sentencia que ordena al foro de instancia a adjudicar el relevo de sentencia. Así modificada se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.

      Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton emitió una Opinión Disidente a la cual se une el Juez Presidente Interino señor Rebollo López.

                              Patricia Otón Olivieri
                        Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Sol María Vázquez Ortiz

    Demandante-Peticionaria


    v.                                                    CC-2002-689

Juan M. López Hernández

    Demandado-Recurrido


Opinión Disidente emitida por el Juez Asociado señor Hernández Denton a la cual se une el Juez Presidente Interino señor Rebollo López

San Juan, Puerto Rico, a 25 de noviembre de 2003


Disentimos de la Opinión del Tribunal en el caso de epígrafe por entender que la decisión del foro de instancia objeto de la presente controversia fue dictada sin éste tener jurisdicción sobre la persona de la esposa del padre alimentante y la sociedad legal de gananciales compuesta por ambos. El que la esposa haya firmado y juramentado una planilla de Información Personal y Económica, que es presentada por el padre alimentante en cumplimiento con una orden del tribunal, no constituye el "acto sustancial" requerido para que haya sumisión voluntaria a la jurisdicción del

tribunal. Por ello, estimamos que la Opinión mayoritaria convalida una decisión que en franco atropello al debido proceso de ley le impone a una mujer trabajadora la carga individual de responder por los alimentos de un hijo no común de su cónyuge.

I

A

Nuestra inconformidad con la presente Opinión del Tribunal gira, primordialmente, en torno a la aplicación e interpretación de la jurisprudencia que trata la figura de sumisión o comparecencia voluntaria. Esta figura, como hemos dicho en otras ocasiones, hace innecesario la notificación formal del pleito al demandado mediante el emplazamiento provisto en la Regla 4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 4. Veamos.

Es evidente que la Sra. Jeannette Lambert Rosado (en adelante "señora Lambert Rosado"), quien junto al señor López Hernández compone una sociedad legal de gananciales, es parte indispensable en el pleito de pensión alimentaria en beneficio de una hija menor de éste. No cabe duda que sus intereses y derechos van a verse afectados por una reclamación en la cual la magnitud de la responsabilidad, en gran medida, depende de sus ingresos. Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 16.1; Rodríguez Rodríguez v. Moreno Rodríguez, 135 D.P.R. 623 (1994); Cepeda Torres v.

García Ortiz, 132 D.P.R. 698 (1993); Granados v. Rodríguez Estrada II, 124 D.P.R. 593 (1989); Carrero Suárez v. Sánchez López, 103 D.P.R. 77 (1974). Hemos resuelto que el cónyuge del padre alimentante es parte indispensable en un pleito por pensión alimentaria de un hijo no común, aun en casos donde la pareja pactó mediante capitulaciones matrimoniales un régimen distinto al de sociedad legal de gananciales, Cepeda Torres v. García Ortiz, *supra*, a la pág. 706.

Conforme a lo anterior, la señora Lambert Rosado debió de haber sido emplazada de acuerdo a las Reglas de Procedimiento Civil de Puerto Rico. Sin embargo, nunca fue emplazada. El asunto a dilucidar es entonces si ésta se sometió voluntariamente a la jurisdicción del tribunal, de manera que dicho emplazamiento formal se hiciera innecesario. Entendemos que no hubo sumisión. Nos explicamos.

El propósito del emplazamiento es notificar al demandado sobre la reclamación en su contra para así garantizarle su derecho a ser oído y defenderse. Márquez v. Barreto, 143 D.P.R. 137, 142 (1997). De esa manera el tribunal hace efectiva su jurisdicción sobre la persona del demandado. *Id.* En innumerables ocasiones hemos resuelto que la validez de una determinación judicial depende de si la notificación de la reclamación al demandado constituyó una probabilidad razonable de informarle a éste sobre la acción entablada

en su contra, de forma tal, que pueda comparecer a defenderse si así lo desea. Peguero y Otros v. Hernández Pellot, 139 D.P.R. 487 (1995); Pou v. American Motors Corp., 127 D.P.R. 810 (1991); Rodríguez v. Nasrallah, 118 D.P.R. 93 (1986).

La política pública prevaleciente en nuestro ordenamiento es que la parte demandada debe ser emplazada debidamente para evitar fraude y evitar que se utilicen los procedimientos judiciales para privar a una persona de su propiedad sin el debido proceso de ley. Quiñones Román v. Compañía ABC H/N/C Supermercado Pueblo, res. el 31 de octubre de 2000, 2000 TSPR 172; y casos allí citados. La notificación adecuada al demandado es un mandato constitucional del debido proceso de ley. Quiñones Román v. Compañía ABC H/N/C Supermercado Pueblo, supra; First Bank of P.R. v. Inmobiliaria Nac., Inc., 144 D.P.R. 90; Peguero y Otros v. Hernández Pellot, supra; Riego Zúñiga v. Líneas Aéreas LACSA, 139 D.P.R. 509 (1995). Ello es lo que legitima el ejercicio de jurisdicción del tribunal sobre la persona del demandado. Véase además, Lucero Cuevas v. San Juan Star Co., res. el 16 de mayo de 2003, 2003 TSPR 80; y casos antes citados.

Por consiguiente, toda sentencia dictada contra una parte que no fue emplazada o notificada conforme a derecho es inválida y no puede ser ejecutada. Álvarez Elvira v. Arias Ferrer, res. el 18 de marzo de 2002,

2002 TSPR 31. Se trata de un caso de nulidad radical por imperativo constitucional. *Id., citando a* Calderón Molina v. Federal Land Bank, 89 D.P.R. 704, 709 (1963); *además*, Montañéz v. Policía de P.R., res. el 3 de mayo de 2000, 2000 TSPR 68. Como consecuencia lógica de ello, "[u]na sentencia dictada sin tal notificación y oportunidad carece de todos los atributos de una determinación judicial; es una usurpación y opresión judicial y nunca puede ser sostenida donde la justicia se administra justicieramente". J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, publicaciones JTS, 2000, T. I, pág. 138. Este es el mismo resultado al que hemos llegado cuando recae un fallo en un litigio en el cual no se acumuló una parte indispensable. *Id*., a la pág. 372, *citando* Unisys v. Ramallo, 128 D.P.R. 842, 859 (1991).

No obstante lo anterior, en ciertas instancias la garantía del debido proceso de ley puede quedar debidamente resguardada aún en ausencia del emplazamiento formal al demandado. Franco v. Corte, 71 D.P.R. 686 (1950); Méndez v. Sucesión Sella, 62 D.P.R. 345 (1943). Esto ocurre cuando una parte se somete voluntariamente a la jurisdicción del tribunal de manera tácita o expresa. Conforme a nuestra jurisprudencia, la figura de la sumisión consiste en que una parte comparece voluntariamente y realiza algún **acto sustancial** que la constituya parte en el pleito. Qume

Caribe, Inc. v. Sec. de Hacienda, res. el 30 de marzo de 2001, 2001 TSPR 38; *citando a* Echevarría Jiménez v. Sucesión Pérez, 123 D.P.R. 664 (1989); Mercado v. Panthers Military Society, 125 D.P.R. 98 (1990). De esta manera, la comparecencia voluntaria de la parte demandada suple la omisión del emplazamiento y ello es suficiente para que el tribunal adquiera jurisdicción sobre su persona. Franco v. Corte, *supra*; Méndez v. Sucesión Sella, *supra*. En síntesis, se ha dicho que "[a] court's determination of the personal liability of a defendant only can satisfy due process if he was served personally within the state or otherwise engaged in conduct that indicated a willingness to litigate in the forum". Wright & Miller, 4 *Federal Practice and Civil Procedure*, 3d ed., sec. 1064, pág. 340.

En particular, hemos resuelto que el solicitar una vista para impugnar la determinación de una agencia administrativa constituye sumisión a la jurisdicción de la agencia y hace innecesaria la notificación formal de dicha determinación mediante correo certificado. Qume Caribe, Inc. v. Sec. de Hacienda, *supra*. Asimismo, hemos determinado que hubo sumisión cuando una parte demandada comparece ante el tribunal a través de su abogado en un escrito titulado contestación; cuando presenta reconvención aún sin contestar; cuando contesta y presenta defensas afirmativas sin alegar ausencia o deficiencia del emplazamiento; o cuando contesta y

refuta una moción al amparo de la Regla 49.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 49.2, sobre relevo de sentencia, sin alegar falta de jurisdicción sobre la persona. Franco v. Corte, *supra*; Méndez v. Sucesión Sella, *supra*; Sterzinger v. Ramírez, 116 D.P.R. 762 (1985); Banco Santander v. Fajardo Farms, 141 D.P.R. 237 (1996).

Por el contrario, en otras instancias hemos resuelto que no hay comparecencia voluntaria del demandado cuando de los hechos no surge el acto sustancial requerido por nuestra jurisprudencia. Por ejemplo, en Álvarez Elvira v. Arias Ferrer, *supra*, el padre demandado por pensión alimentaria fue encarcelado luego de más de tres años de haber recaído sentencia sin que éste hubiese cumplido con el fallo. Dicho demandado no fue notificado de la vista en su fondo ni de la decisión final en la que se dispuso la cuantía del pago de pensión alimentaria. Por consiguiente, en la vista de desacato alegó que la referida sentencia fue dictada sin que el tribunal tuviese jurisdicción sobre su persona, lo cual no fue acogido favorablemente por el tribunal de instancia. Para poder ser excarcelado, el padre demandado tuvo que acordar con la parte demandante un plan de pago para la deuda acumulada.

A la luz de esos hechos, resolvimos entonces que la vista de desacato por falta de pago de alimentos fue "consecuencia de una sentencia que adolece de nulidad

absoluta" por falta de jurisdicción sobre la persona, y por lo tanto, no puede entenderse como un acto de sumisión a la jurisdicción del tribunal el acuerdo posterior entre las partes dirigido a resolver la excarcelación del alimentante, Álvarez Elvira v. Arias Ferrer, *supra*. *Id*. Como el tribunal nunca adquirió jurisdicción sobre la parte demandada, "todo el trámite subsiguiente fue efectuado sin autoridad alguna". *Id*. De acuerdo a nuestra jurisprudencia respecto a la validez de una sentencia emitida sin que el tribunal haya asumido jurisdicción sobre el reclamado, en el referido caso concluimos que la sentencia sobre pensión alimentaria emitida hacía tres años adolecía de nulidad radical, y por consiguiente, era inexistente en derecho. *Id*.

De igual forma, hemos resuelto que la mera presencia de la parte demandada en la sala del tribunal no es suficiente para conferir jurisdicción al tribunal sobre su persona. Claudio v. Casillas Mojica, 100 D.P.R. 761 (1972).

De los casos citados anteriormente, se destacan varios factores al determinar si hubo o no sumisión a la jurisdicción del tribunal en ausencia de la notificación formal del pleito al demandado provista en las Reglas de Procedimiento Civil. Primero, resalta el hecho de que el acto que configuró la sumisión a la jurisdicción del tribunal fue uno **"sustancial"**, como una defensa en los

méritos, la presentación de defensas afirmativas o reconvenciones, y la solicitud de vistas dentro del procedimiento. Segundo, que la persona que realiza el **"acto sustancial"** que se entiende como sumisión es propiamente la parte demandada que no fue formalmente emplazada; no un tercero parte del pleito. Tercero, que el tiempo transcurrido entre la emisión de la sentencia recaída en ausencia de jurisdicción sobre la persona del demandado y su impugnación, no es un factor determinante. Se trata de una sentencia que adolece de nulidad radical, que no puede convalidarse con el paso del tiempo. Cuarto, que el alto interés público que pudiera implicar la reclamación contra el demandado no convalida la sentencia recaída en ausencia de jurisdicción sobre su persona. Como ya dijimos, esa es una actuación judicial *ultravires* no susceptible de convalidación.

Nótese, que la comparecencia voluntaria ante el tribunal se ha reconocido como un acto afirmativo por parte del demandado que demuestra que éste conoce cabalmente la acción en su contra y se propone actuar al respecto. No puede ser de otra manera. Como sustituto del emplazamiento, la figura jurisprudencial de la sumisión debe cumplir con el mismo propósito de éste a la luz de los preceptos del debido proceso de ley. Es decir, la sumisión debe denotar *inequívocamente*, por ser un asunto de tanta centralidad en la legitimidad de las

actuaciones judiciales, que la parte demandada conoce que la acción entablada es en su contra y que ha decidido *actuar o no actuar* al respecto.

Precisamente porque esta norma de creación jurisprudencial hace innecesaria la notificación formal, es que debe interpretarse y aplicarse con suma cautela y resolverse cualquier duda a favor de la parte demandada. Así, evitamos situaciones como la presente, en la que se multiplican los litigios, se extiende innecesariamente la duración de la reclamación y se dificulta el cumplimiento del fallo que en su día recaiga. Sólo en casos claros de sumisión voluntaria donde el demandado demuestra interés inequívoco de defenderse o no defenderse de la reclamación en su contra debe el tribunal determinar que es innecesario el emplazamiento formal. Nótese además, que la liberalidad de la norma de sumisión o comparecencia voluntaria tiene implicaciones serias sobre la autoridad de la Rama Judicial para obligar con sus decisiones. Por esta centralidad en nuestro ordenamiento jurídico, debemos ser cuidadosos al interpretar esta norma procesal y al pautar reglas nuevas en este ámbito.

Luego de esta discusión del derecho aplicable, veamos si la señora Lambert Rosado se sometió a la jurisdicción del tribunal de instancia, como consecuencia de las actuaciones de su esposo durante el

pleito por pensión alimentaria resuelto en diciembre de 1997.

B

La Opinión del Tribunal sostiene que la señora Lambert Rosado, esposa del señor Juan M. López Hernández (en adelante "señor López Hernández"), padre demandado por pensión alimentaria en el caso de epígrafe, compareció voluntariamente ante el tribunal de instancia sin necesidad de que le notificaran la reclamación en su contra mediante el emplazamiento formal. En específico, la conducta que según la Mayoría constituyó sumisión se refiere **al cumplimiento por parte del señor López Hernández de una orden** del tribunal en la que se le exigió presentar una Planilla de Información Personal y Económica (en adelante "PIPE") con respecto a su esposa, la señora Lambert Rosado. Ello, concluye la Opinión mayoritaria, configuró el **"acto sustancial"** que convirtió en parte a la señora Lambert Rosado y la sometió a la jurisdicción del Tribunal.

Sobre este particular, en los autos consta una certificación de la Secretaria del Centro Judicial de Guayama en la que se hace constar que en el caso sobre pensión alimentaria que da origen a la presente controversia, "no surge documento alguno que establezca que la Sra. Lambert Rosado y la Sociedad Legal de Gananciales hayan sido notificados o emplazados antes del 10 de mayo de 1999 por el Tribunal de Primera

Instancia, Sala Superior de Aibonito". Asimismo, el epígrafe de todos los documentos que constan en autos lee: "Sol María Vázquez Ortiz v. Juan M. López Hernández". No hay referencia alguna a la sociedad legal de gananciales o a la señora Lambert Rosado en el epígrafe. Ninguna de las órdenes del tribunal de instancia estuvo dirigida a la señora Lambert Rosado, ni fueron notificadas a ésta.

Cabe aclarar que en este caso se debió demandar, y por supuesto emplazar, a tres personas: el señor López Hernández, la señora Lambert Rosado y la sociedad legal de gananciales compuesta por ambos. Pauneto v. Núñez, 115 D.P.R.  591 (1984). No cabe duda de que a la sociedad legal de gananciales pudo haberse traído al pleito mediante su emplazamiento a través de uno de los cónyuges. Id. Sin embargo, en un caso como el de autos, el tribunal no puede adquirir jurisdicción sobre la persona de uno de los cónyuges mediante el emplazamiento del otro. Vega Ortiz v. Bonilla, res. el 12 de marzo de 2001, 2001 TSPR 38. Bajo el mismo razonamiento, uno de los cónyuges no tiene autoridad para comparecer voluntariamente a nombre del otro ante el tribunal, en ausencia de un mandato expreso a esos efectos. Id.

En este caso, ciertamente la señora Lambert Rosado juramentó la PIPE solicitada a su esposo mediante orden del tribunal. No obstante, ella personalmente no estaba

cumpliendo con ninguna orden del tribunal en esa ocasión. Más aun, de los autos no surge que ella en algún momento o de forma alguna estuviera enterada de que el caso de pensión alimentaria contra su esposo le afectaría de manera directa. Ello, ya que no fue emplazada. Tampoco consta en los autos evidencia de que la demanda por pensión alimentaria incluyó alegaciones en su contra o que la parte demandante solicitara que sus ingresos fueran considerados. En los documentos ante nos no consta la demanda original de pensión alimentaría ni el emplazamiento del señor López Hernández. Cabe preguntarse ante estas circunstancias, si la señora Lambert Rosado fue efectivamente parte demandada en el litigio que concluyó con la Resolución del tribunal de instancia de diciembre de 1997.

Sí surge de los autos, sin embargo, que la cuantía de la pensión fijada finalmente se determinó con los ingresos exclusivos de la señora Lambert Rosado pues las planillas del señor López Hernández no estaban juramentadas y al momento de concluir el caso, éste aparentemente no tenía fuentes de ingresos. Esto indica que la determinación del tribunal, la cual afectó directamente la propiedad de la señora Lambert Rosado, se tomó en violación al debido proceso de ley. Como ya se dijo, además, la PIPE juramentada que informó los ingresos de la señora Lambert Rosado fue presentada ante el tribunal por el señor López Hernández, en

cumplimiento de una orden a estos efectos. En ningún momento *la señora Lambert Rosado* cumplió con las órdenes del tribunal o presentó documentos pertinentes dirigidos a dilucidar la reclamación incoada por la señora Sol María Vázquez Ortiz.

No obstante todo lo anterior, la Mayoría de este Tribunal hoy resuelve que cuando el señor López Hernández, en cumplimiento con una orden del tribunal, presentó la PIPE juramentada por la señora Lambert Rosado con la información financiera de ésta, la convirtió en parte del litigio sobre pensión alimentaria. Por consiguiente, el Tribunal concluye que ese acto hizo innecesaria la notificación formal y sostiene que la decisión judicial que recayó contra la señora Lambert Rosado fue válida de acuerdo a los preceptos del debido proceso de ley. O sea, que la norma ahora vigente es en el sentido de que las acciones de uno de los demandados dentro del pleito pueden tener el efecto de someter a la jurisdicción del tribunal a un tercero que no fue notificado formalmente por el demandante, ni con respecto al cual se desprende de las alegaciones una reclamación en su contra.

La Opinión del Tribunal también expresa innecesariamente que se da la sumisión cuando la parte demandada cumple voluntariamente con las órdenes del tribunal y, a solicitud de éste, presenta documentos pertinentes dirigidos a dilucidar el pleito en su

contra.   Nótese, que este es un nuevo estándar para determinar si hubo o no sumisión a la jurisdicción del tribunal que no refleja la interpretación de esta figura en nuestra jurisprudencia.  Se trata de una norma que expone el debido proceso de ley que ampara a la parte demandada a una flexibilidad excesiva.  Se aleja del "acto sustancial" que consistentemente hemos requerido en estos casos y trae confusión a los tribunales de primera instancia que ahora se enfrentan a un principio más liberal que el hasta ahora prevaleciente.

A la luz de todo lo anterior, no podemos estar conformes con dicha norma.

C

En cuanto a la sociedad legal de gananciales, la Opinión resuelve que el tribunal también adquirió jurisdicción cuando en 1990, el señor López Hernández compareció ante el tribunal de instancia para estipular la pensión alimentaria de su hija menor de edad, también alimentista en el presente caso.  Ello, sumado a la comparecencia del señor López Hernández y la presentación de documentación sobre los ingresos económicos de dicha entidad, el Tribunal concluye que en este caso es suficiente para adquirir jurisdicción sobre la persona de la sociedad legal de gananciales compuesta por éste y la señora Lambert Rosado.  En este sentido, la Opinión cita a Urbino v. San Juan Racing, 141 D.P.R. 210 (1996).

Sin embargo, como ya dijimos anteriormente, no consta en autos ningún emplazamiento que haga referencia a la sociedad legal de gananciales y no hay documentos en los que podamos constatar la alegación de una causa de acción en contra de esta entidad. Asimismo, según la certificación de la Secretaria del Tribunal de Primera Instancia de Guayama citada anteriormente, el emplazamiento del señor López Hernández no hace referencia alguna a la sociedad legal de gananciales compuesta por él y la señora Lambert Rosado.

De igual forma, el extender la jurisdicción del tribunal durante el trámite judicial de 1990 para concluir que siete años más tarde el emplazamiento de una de las partes era innecesario, es totalmente incompatible con el debido proceso de ley. Ese razonamiento da al traste con las normas procesales vigentes y hace fútil el requerimiento de la notificación formal provisto en las Reglas de Procedimiento Civil en casos sobre aumento o reducción de pensión alimentaria. De todas formas, en los autos no constan los documentos necesarios para que pasemos juicio sobre la facultad del señor López Hernández para someter a la jurisdicción del tribunal a la sociedad legal de gananciales en aquel momento. Además, ello no está planteado ante nos.

Por otro lado, a pesar de que la Opinión del Tribunal incluye amplias conclusiones referentes a la

jurisdicción del tribunal de instancia sobre la sociedad de gananciales y la señora Lambert Rosado, en los autos no consta la demanda original de alimentos. Por consiguiente, desconocemos si hubo alegación alguna en contra de estas personas y sus recursos económicos. Este es un factor determinante a la luz de la Opinión en Vega Ortiz v. Bonilla, *supra*. Allí concluimos que en vista de que de las alegaciones de la demanda no surgía una causa de acción en contra de la sociedad legal de gananciales y en el emplazamiento no se mencionó a ésta o se aseveró que se estaba emplazando mediante el cónyuge que fue efectivamente emplazado, el tribunal no adquirió jurisdicción sobre dicha entidad a pesar de que uno de sus componentes fue emplazado adecuadamente.

En esa misma instancia, también distinguimos el caso de Urbino v. San Juan Racing, *supra*. Al respecto, consideramos que de la demanda como del emplazamiento debe surgir con meridiana claridad que se está reclamando contra la sociedad para que uno de los cónyuges pueda válidamente someterla a la jurisdicción del tribunal. A la luz del expediente ante nos, estamos impedidos de concluir que en este caso la sociedad legal de gananciales fue parte demandada y que, por lo tanto, el señor López Hernández pudo someterla válidamente a la jurisdicción del tribunal.

Reconocemos el alto interés público que tienen los casos de alimentos para los menores de edad. Empero, no

debemos sostener una sentencia que impone el pago de una pensión alimentaria que recayó en franca violación al debido proceso de ley. Conforme a ello, dejaríamos sin efecto la Resolución del Tribunal de Primera Instancia de diciembre de 1997 y todo trámite ulterior secuela de ésta por ser consecuencia de un procedimiento judicial nulo por falta de jurisdicción sobre la persona de partes indispensables.

Federico Hernández Denton
Juez Asociado