Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| JUAN ANTONIO MOREIRA<br><br>Peticionario<br><br>v.<br><br>AMNERIS VELÁZQUEZ COLÓN<br><br>Recurrida | KLCE202500482 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Civil núm.:<br>D DI2019-0049<br><br>Sobre:  Divorcio |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Candelaria Rosa y el Juez Marrero Guerrero.

Sánchez Ramos, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 8 de mayo de 2025.

El Tribunal de Primera Instancia ("TPI") denegó una solicitud de un padre dirigida a que dicho foro determinase la cuantía que este entiende pagó en "exceso" en conexión con una pensión alimentaria.  Según se explica en detalle a continuación, concluimos que no procede nuestra intervención con lo actuado por el TPI, pues (i) el padre no nos ha colocado en posición de determinar que en efecto tenga acreencia alguna y (ii) aun si este la tuviese, le correspondería a este demostrar su existencia, así como la correspondiente cuantía, en una acción independiente.

I.

Según surge de una Resolución y Orden de 12 de marzo de 2025 (el "Dictamen"), el Sr. Juan A. Moreira Vidal (el "Padre"), quien aceptó capacidad económica, recientemente incumplió con su obligación de pagar "las comidas … fuera del plan de alimentos de

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones.  Como consecuencia de la referida orden, **este recurso, así como todo recurso futuro que surja del caso de referencia será atendido por los integrantes de este panel, quienes adjudicaron el correspondiente recurso anterior (KLCE202200791)**.

la universidad" de su hijo, "desde septiembre de 2024 hasta marzo de 2025". Por tal razón, el TPI declaró con lugar una moción de desacato presentada por la Sa. Amneris Velázquez Colón (la "Madre") y le concedió al Padre el término de 20 días para que satisfaga la cuantía debida ($2,233.00).

El 11 de abril de 2025, el Padre solicitó al TPI que determinase la cantidad que él entiende la Madre le debe por pagos en exceso de la pensión establecida, realizados antes de octubre de 2024. Descansa en que, en el Dictamen, se señaló que el Padre había "pag[ado] en exceso de lo que le correspondía". Ello porque el Padre planteó que, aunque se mantuvo pagando la pensión establecida, en realidad, los gastos pertinentes (vivienda y utilidades) se habían reducido desde que la Madre se mudó a vivir con un familiar a finales de 2023. El Padre resaltó que, precisamente por ello, el TPI, el 7 de octubre de 2024, había reducido la pensión de forma **provisional** (el Padre no incluyó esta determinación con el recurso).

Mediante una Orden emitida el 24 de abril, el TPI denegó la solicitud del Padre, en cuanto a determinar la cantidad que este entiende la Madre le debe.

El 2 de mayo, el Padre presentó el recurso que nos ocupa. Señala que, desde agosto de 2024, solicitó al TPI que se redujera la pensión por un "cambio extraordinario en los gastos" de su hijo (el Padre no acompañó este escrito con el recurso). Alega que, desde noviembre de 2023, la Madre "se había mudado de la residencia", lo cual implicaba una reducción (o la eliminación) de "los gastos de renta, servicios básicos y empleada doméstica". Arguye que, según lo solicitado por él, el TPI debió "cuantificar el crédito reconocido por exceso de pago de pensión alimentaria de manera de poder proceder con el cobro de dinero" a la Madre. Disponemos.

## II.

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *IG Builders et al. v. BBVAPR*, 185 DPR 307 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). Distinto al recurso de apelación, el tribunal revisor tiene la facultad de expedir el recurso de manera discrecional, por tratarse de ordinario de asuntos interlocutorios. Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

La Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1, reglamenta en qué circunstancias este Tribunal podrá expedir un auto de *certiorari*; al respecto, dispone, en lo pertinente (énfasis suplido):

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido** por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de **testigos de hechos o peritos** esenciales, asuntos relativos a **privilegios** evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en **cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia**. …

La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII–B, R. 40 ("Regla 40"), establece los criterios a examinar para ejercer nuestra discreción, al disponer lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

III.

La obligación de proveer alimentos a los hijos menores de edad es parte del derecho a la vida establecido en el Artículo 2 de la Sección 7 de la Constitución del Estado Libre Asociado del ELA. Const. PR, Art. 2, Sec. 7, 1 LPRA; *De León Ramos v. Navarro Acevedo*, 195 DPR 157, 169 (2016), *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 711 (2014); *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 560 (2012); *Fonseca Zayas v. Rodríguez Meléndez*, 180 DPR 623, 632 (2011); *McConnell v. Palau*, 161 DPR 734, 745 (2004).

Toda vez que el derecho de los menores a recibir alimentos es uno consustancial al derecho a la vida, existe un alto interés público de asegurar el cumplimiento del deber de prestar alimentos. *Llorens Becerra v. Mora Monteserín*, 178 DPR 1003, 1016 (2010); *Chévere v. Levis*, 150 DPR 525, 535 (2000); *Martínez v. Rodríguez*, 160 DPR 145, 150-151 (2003); *Argüello v. Argüello*, 155 DPR 62, 69-70 (2001). En virtud de ello, se aprobó la Ley Núm. 5 de 30 de diciembre de 1986, conocida como la Ley Orgánica de la Administración para el Sustento de Menores, según enmendada, 8 LPRA sec. 501 *et seq.* (la "Ley 5"). *Rodríguez Rivera,* 191 DPR a las págs. 711-712.

Las determinaciones relacionadas con alimentos siempre están sujetas a modificación según varíen las circunstancias de las partes. Este tipo de adjudicación nunca tiene el carácter de cosa juzgada. *Figueroa v. Del Rosario*, 147 DPR 121, 129 (1998); *Cantellops v. Cautiño Bird*, 146 DPR 791, 806 (1998).

La Ley 5 contempla que las pensiones alimentarias sean revisadas cada 3 años. Artículo 19(c) de la Ley 5, LPRA sec. 518(c). No obstante, pueden ser revisadas antes de esta fecha si ha ocurrido un cambio significativo o imprevisto en las circunstancias de las partes. *McConnell*, 161 DPR a las págs. 749-750; *Aponte v. Barbosa Dieppa*, 146 DPR 558, 579 (1998). En otras palabras, tiene que haberse producido una alteración sustancial en las necesidades del alimentista o los recursos económicos del alimentante. *Magee v. Alberro*, 126 DPR 228, 233 (1990); *Negrón Rivera y Bonilla, Ex parte*, 120 DPR 61, 77 (1987). El peso de la prueba recae sobre la parte que solicita la revisión de la pensión alimentaria para establecer las circunstancias que hacen necesaria que sea modificada. *Argüello*, 155 DPR a la pág. 78; *Negrón Rivera y Bonilla,* 120 DPR a la pág. 78.

Ahora bien, cuando un padre o madre alimentante admite que cuenta con medios suficientes para satisfacer sus obligaciones alimentarias para con sus hijos menores se prescinde, por innecesario, del trámite provisto en la Ley 5, *supra*, y de la utilización de las Guías Mandatorias para computar las pensiones alimentarias en Puerto Rico. "[C]uando un padre alimentante acepta que posee suficientes ingresos para pagar la pensión alimentaria que en derecho proceda a favor de sus hijos, promueve, con acierto, el interés público del bienestar de los menores y agiliza los procedimientos en cuanto a la otorgación de pensiones alimentarias". *Chévere*, 150 DPR a la pág. 544.

La aceptación de capacidad económica acarrea consecuencias importantes para el alimentante. De entrada, queda impedido de

posteriormente impugnar la pensión que se establezca, aduciendo que no cuenta con los recursos necesarios para ello. *De León Ramos*, 195 DPR a la pág. 173; *Santiago, Maisonet*, 187 DPR a la pág. 565; *Ferrer v. González*, 162 DPR 172, 179 (2004); *Chévere*, 150 DPR a la pág. 546.

Por otro lado, queda protegida la información sobre el patrimonio de la persona que acepta capacidad. *De León Ramos*, *supra*; *Santiago, Maisonet, supra*; *Ferrer, supra*; *Chévere, supra*. En los casos bajo la Ley 5, *supra*, y las Guías Mandatorias, el descubrimiento de prueba juega un papel fundamental en el proceso de establecer las pensiones alimentarias de los menores. Lo anterior, debido a que para poderlas fijar resulta indispensable conocer la realidad económica del alimentante, así como la situación del alimentista. *De León Ramos*, 195 DPR a la pág. 174.

Por vía de excepción, cuando el padre o madre alimentante admite capacidad para satisfacer la pensión alimentaria, "se torna innecesario el mecanismo de descubrimiento de prueba dirigido a precisar su situación económica". *Íd.*; *Santiago, Maisonet, supra* citando a *Chévere*, 150 DPR a la pág. 544. Esta limitación se extiende a todo descubrimiento de prueba del alimentante e incluye su estilo de vida, por entenderse innecesaria. *De León Ramos*, 195 DPR a las págs. 174-175. "El estilo de vida de un alimentante puede ser determinado o inferido de su capacidad económica, sin necesidad de aportar prueba sobre si el alimentante vive o no de manera compatible con ella". (Énfasis suprimido). *Íd.*, a la pág. 175; *Ferrer*, 162 DPR a la pág. 181.

Por último, **el alimentante está obligado a cubrir el 100% de la pensión adjudicada**. *Íd.* En cuanto a la razón para ello, en *De León Ramos, supra,* se expresó lo siguiente:

> … En estos casos no se cuenta con información concerniente a los ingresos y el patrimonio de la persona no custodia, datos que resultan indispensables

para poder asignarle a cada uno de los padres su correspondiente proporción de responsabilidad alimentaria. En otras palabras, se desconoce una variable esencial a la fórmula establecida para calcular las pensiones. Ello impide, por lo tanto, realizar el cómputo matemático necesario para poder determinar la cantidad proporcional que viene obligado a contribuir individualmente cada progenitor. *De León Ramos*, supra, citando a *Santiago, Maisonet v. Maisonet Correa, supra.*

Así pues, una vez uno de los progenitores acepta tener capacidad económica, procede que este pague la totalidad de la pensión alimentaria que se establezca en atención exclusivamente a las necesidades del menor. *Íd.*, citando a *Ferrer, supra.* Entonces, le corresponde a la persona custodia presentar evidencia de los gastos razonables de los menores, así como del estilo de vida del alimentante, para determinar el total de la pensión que el alimentante debe pagar. *Íd.*, citando a *Santiago, Maisonet, supra.*

IV.

Concluimos que actuó correctamente el TPI al declinar la solicitud del Padre dirigida, en esencia, a que dicho foro adjudicase la cuantía que supuestamente la Madre le debe por pago "en exceso" de la pensión establecida.

Como cuestión de umbral, no está claro que, en realidad, el Padre tenga acreencia alguna. Aunque el TPI consigna que, en octubre, la pensión fue rebajada, de forma provisional, no surge del récord, ni el Padre ha acreditado, que se haya dispuesto que la rebaja sería retroactiva. De hecho, por ser un dictamen provisional, la rebaja no podría ser retroactiva. Por tanto, las cuantías pagadas antes de dicha decisión no podrían, técnicamente, considerarse como pagos "en exceso", pues fueron acorde con la pensión entonces vigente.

Más aún, subrayamos que, si en algún momento procediera una rebaja formal o "final" en la pensión[2], la misma no puede retrotraerse a un tiempo anterior a la decisión del tribunal. *Vázquez v. López,* 160 DPR 714, 728 (2003) ("la fecha de efectividad de una rebaja en la pensión alimentaria deberá ser la del día en que se emite el dictamen que la autoriza"). Únicamente en "circunstancias extraordinarias" podría establecerse de forma retroactiva a la fecha de la notificación de la solicitud de rebaja. 8 LPRA sec. 518; véase, además, *Valencia y Riollano, Ex Parte,* 116 DPR 909 (1986); *Vázquez,* 160 DPR a la pág. 728.

Adviértase que "intervenir 'a posteriori' con pensiones aliment[arias] ya 'devengadas' con la que esa madre [o padre cuenta] para poder cumplir con los compromisos contraídos ... causaría una desastrosa e inaceptable inestabilidad ... que no debe ser permitida." *Vázquez,* 160 DPR a la pág. 727 (citando *Valencia, supra*). Permitir un relevo retroactivo de una pensión anteriormente establecida "tendría el efecto de fomentar aún más los atrasos en el pago de las pensiones aliment[arias]" y va "en contra de los mejores intereses" del menor. *Vázquez,* 160 DPR a la pág. 727 (citando *Valencia, supra*).

En cuanto a las circunstancias "extraordinarias" que pudiesen justificar disponer que una rebaja de pensión alimentaria sea efectiva antes del día en que el tribunal toma la decisión al respecto, ello se refiere a "casos extraordinarios de enfermedad, hospitalización, inconciencia y, en general, cualquier evento constitutivo de fuerza mayor o caso fortuito". *Vázquez, supra,* 160 DPR a la pág. 728. No está claro si el Padre realmente podría demostrar, en su día, que en este caso están presentes el tipo de

---

[2] Tampoco surge del récord exactamente qué tipo de reducción de gastos habría tenido la Madre al mudarse. Adviértase que el familiar con quien ella se mudó podría legítimamente requerir a la Madre y a su hijo que contribuyan a los gastos de ese hogar o que satisfagan un canon de arrendamiento por la utilización de la residencia.

circunstancias extraordinarias que ameritaría que una rebaja en la pensión se decrete de forma retroactiva.

En cualquier caso, aun partiendo de la premisa (no demostrada, según arriba explicado) que existiese alguna acreencia, por pago en exceso o por algún otro concepto, le correspondería al Padre demostrarlo, incluida la cuantía, en una acción independiente, por lo que el TPI no estaba obligado a adjudicar este extremo en el contexto de este caso.

V.

Por los fundamentos antes expuestos, se deniega la expedición del auto solicitado.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones