# 2007 DTA 91

### TRIBUNAL DE APELACIONES
### REGIÓN JUDICIAL DE AGUADILLA

ASOCIACIÓN DE RESIDENTES URBANIZACIÓN QUINTAS DEL ATLÁNTICO, INC., *ET AL*
Apelados

v.

MIGUEL A. OQUENDO MALDONADO; AIDA N. GRAULAU HERNÁNDEZ Y
LA SOCIEDAD LEGAL DE GANANCIALES
Apelantes

MANOLO COLON DÍAZ, SANDRA E. DELGADO ROSADO, Y LA SOCIEDAD
LEGAL DE GANANCIALES QUE COMPONEN
Apelados

v.

MIGUEL A. OQUENDO MALDONADO; AIDA N. GRAULAU HERNÁNDEZ Y LA SOCIEDAD LEGAL
DE GANANCIALES; JEFFREY ABREU PROSPER, LISSETTE ALERS MÉNDEZ Y LA SOCIEDAD
LEGAL DE GANANCIALES QUE COMPONEN; DAVID VALENTÍN BAYÓN, MARÍA DE LOS ÁNGELES
VARGAS TORRES Y LA SOCIEDAD LEGAL DE GANANCIALES QUE COMPONEN; JOHN ROBERT
MOJICA ZAYAS, ROSEMARY DÍAZ MONTALVO Y LA SOCIEDAD LEGAL DE GANANCIALES QUE
COMPONEN.
Apelados

v.

MIGUEL A. OQUENDO MALDONADO; AIDA N. GRAULAU HERNÁNDEZ Y
LA SOCIEDAD LEGAL DE GANANCIALES
Apelantes

San Juan, Puerto Rico, a 12 de julio de 2007

Panel integrado por su Presidente, el Juez Rodríguez Muñiz,
y los Jueces Soler Aquino y Cordero Vázquez

Juez Cordero Vázquez, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

Mediante tres recursos independientes (KLAN-2006-01668, KLAN-2006-01669, KLAN-2006-01670) presentados el 27 de diciembre de 2006, la parte peticionaria de epígrafe (en adelante, los peticionarios) nos solicita que revisemos tres resoluciones (APE2004-0060, APE2005-0024, ACD2005-0082) emitidas por Tribunal de Primera Instancia, Sala de Aguadilla (en adelante, el TPI), en noviembre de 2006. En éstas, el TPI declaró No Ha Lugar sus solicitudes de relevo de tres sentencias por estipulación, dictadas en febrero de 2006.

En *Resolución* de 30 de enero de 2007 ordenamos la consolidación de los recursos KLAN-2006-01669 y KLAN-2006-01670 con el KLAN-2006-01668, por estar envueltas cuestiones comunes de hechos y de derecho. Además, por tratarse de la solicitud de remedios postsentencia, acogimos los recursos como solicitudes de *certiorari*.

### I

Los peticionarios son los dueños registrales de dos fincas en las que se desarrolló el proyecto residencial conocido como Urbanización Quintas del Atlántico. Como parte del desarrollo de dichos terrenos, en varias instancias, los peticionarios comparecieron ante la Administración de Reglamentos y Permisos (ARPE), por conducto de la Firma de Ingenieros y Consultores MAGT y/o representados por el Agrimensor José A. López Morales, en solicitud de permisos de segregación, con el fin de formar solares dedicados al uso residencial unifamiliar.

Mediante tres demandas independientes, la Asociación de Residentes de la Urb. Quintas del Atlántico, Inc. (APE2004-0060, de 17 noviembre de 2004); los residentes Jeffrey Abréu Prosper, Lissette Alers Méndez, David Valentín Bayón, María de los Ángeles Vargas Torres, John Robert Mojica Zayas, Rosemary Díaz Montalvo (ACD2005-0082, de 21 de junio de 2005), y; los también residentes Manolo Colón Díaz y Sandra Eunice Delgado Rosado (APE2005-0024, de 30 de junio de 2005) (en adelante todos, los recurridos), presentaron contra los peticionarios causas de acción sobre: *injunction* provisional y permanente; daños y perjuicios; cobro de dinero, e incumplimiento de contrato. Reclamaron que los peticionarios, en su carácter personal, les habían vendido lotes que carecían de la infraestructura necesaria para instalar, entre otros, facilidades de energía eléctrica, cable TV,

207

teléfono, control de acceso y acueductos y alcantarillados; todo ello contrario a las representaciones que se hicieron ante ARPE, los anuncios divulgados mediante varios medios de comunicación y las leyes y reglamentos vigentes.

Durante el trámite ante el TPI, los peticionarios realizaron actos de construcción y otorgaron escrituras que efectivamente pusieron fin a algunas de las reclamaciones de infraestructura realizadas por los recurridos. Así pues, luego de un prolongado proceso de negociación **supervisado por el TPI**, que se extendió desde el 3 de diciembre de 2004 al 2 de febrero de 2006, las partes presentaron conjuntamente ante el TPI tres distintos acuerdos de transacción y solicitud para que se dictara sentencia por estipulación en cada uno de los pleitos pendientes. Los acuerdos fueron acompañados por declaraciones juradas de las partes, en las que hicieron constar que habían examinado y leído cuidadosamente las estipulaciones, las cuales adoptaron voluntariamente y fueron redactadas de conformidad a sus instrucciones. ■

Atendidas las solicitudes de las partes, el TPI dictó sentencias el 8 de febrero de 2006, en el caso APE2005-0024 (Juez Miriam Santiago Guzmán), el 8 de febrero de 2006, en el caso APE2004-0060 (Juez Miriam Santiago Guzmán), y el 27 de febrero de 2006, en el caso ACD2005-0082 (Juez Manuel J. Vera Vera). En todas éstas, el TPI adoptó los acuerdos y estipulaciones presentadas por las partes mediante sus representantes legales, poniendo fin a los casos de epígrafe. ■ En dos de estas determinaciones (APE2005-0024 y APE2004-0060), el TPI hizo constar que no existían justificaciones de minoridad o incapacidad que impidieran dictar sentencia sobre las reclamaciones.

Transcurridos los términos para ir en alzada, el 14 de agosto de 2006, los peticionarios presentaron ante el TPI solicitudes de relevo de sentencia en cada uno de los tres casos. En sus escritos alegaron que *"[p]or las circunstancias extraordinarias que enmarcaron el llamado acuerdo transaccional y la muerte de Don Miguel Ángel Oquendo el pasado 7 de junio de 2006 [solicitaban], en nombre de la Justicia y al amparo de la Regla 49.2 (6), el relevo de la[s] sentencia[s] que se dict[aron] en [los] caso[s] de epígrafe"*. Alegaron su iniciativa fue conceder a un tercero, el Ing. Manuel Antonio Toledo García y/o MAGT Construction and Development, Inc. (en adelante, MAGT), el derecho de explotación de sus fincas a cambio de una compensación económica y que su intervención se limitó al acto de cierre y firma de las escrituras de compraventa de los solares que los recurridos, residentes del proyecto Quintas del Atlántico, adquirieron de MAGT. Habiendo hecho a MAGT el único responsable por las reclamaciones de los recurridos, los peticionarios relataron como en medio de intervenciones quirúrgicas, aflicciones de salud y la depresión causada por la salida de su único hijo varón al conflicto bélico de Irak, éstos habían sido inducidos a aceptar el acuerdo transaccional en un tiempo en el que no podían comprender su contenido y alcance, tras encontrarse mentalmente incapacitados por circunstancias que les drenaron emocional y físicamente.

A base de dichas alegaciones, los peticionarios solicitaron que, revocadas las sentencias, se les permitiera dilucidar adecuadamente las alegaciones en su contra mediante la celebración de un juicio en los méritos. Considerada las solicitudes, el TPI emitió resoluciones (APE2005-0024 - 14 de noviembre de 2006; APE2004-0060 - 8 de noviembre de 2006; ACD2005-0082 - 13 de noviembre de 2006) por las que declaró No Ha Lugar las mociones sobre relevo de sentencias. De esas determinaciones recurren ante nosotros los peticionarios, mediante tres escritos presentados el 27 de diciembre de 2006, alegando que:

*"El Honorable Tribunal de Primera Instancia erró al no conceder relevo de sentencia para la continuación de los procedimientos judiciales ordinarios. Dicho relevo de sentencia procedía porque: (1) el llamado acuerdo transaccional carece de validez, puesto que no concurrieron los elementos del contrato; (2) la referida sentencia se dictó sin la acumulación previa de todas las partes indispensables; (3) a la luz de los hechos judiciales que enmarcaron el llamado acuerdo transaccional no se satisfizo el ministerio fundamental del Tribunal de Justicia ni el debido proceso de ley; (4) por la circunstancia extraordinaria de la muerte del demandado Miguel Oquendo Maldonado."*

## II

### Caso- KLAN-2006-01668

La Regla 47 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 47, establece que toda parte adversamente afectada por una resolución u orden del Tribunal de Primera Instancia puede solicitar su reconsideración dentro del término jurisdiccional de quince (15) días de la fecha de la notificación de la determinación. El tribunal de instancia tiene un plazo de diez (10) días de haberse presentado la moción de reconsideración, para considerarla. *Maymí v. Gob. Mun. Aut. Ponce*, 151 D.P.R. 689, 695 (2000). La moción de reconsideración interrumpe el plazo para recurrir ante el foro apelativo, cuando el tribunal de instancia la acoge o toma alguna determinación en su consideración, como por ejemplo, ordenar a la parte adversa que exponga su posición, señalar vista para escuchar a las partes o referirla al juez que atendió el caso por estar éste enfermo o de vacaciones. *Caro Ortiz v. Cardona Rivera*, 158 D.P.R. 592, 598 (2003); *Castro Martínez v. Sergio Estrada Auto Sales, Inc.*, 149 D.P.R. 213, 221 (1999). Si la rechazare de plano o dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los 10 días de haber sido presentada, se entenderá que la misma ha sido rechazada de plano, por lo que el término para apelar se considerará como que nunca fue interrumpido. 32 L.P.R.A. Ap. III, R. 47.

Los peticionarios, mediante su recurso de *certiorari* (mal llamado *Apelación*), solicitaron la revisión de la *Resolución* emitida el 8 de noviembre de 2006, declarándole No Ha Lugar su moción sobre relevo de sentencia. El dictamen fue notificado el 15 de noviembre de 2006. El 27 de noviembre de 2006, es decir, dentro del término jurisdiccional de quince (15) días dispuesto por la Regla 47, *supra*, los peticionarios solicitaron reconsideración ante el TPI. El mismo día de su presentación, dicho foro declaró No Ha Lugar la solicitud de reconsideración. La determinación se notificó a las partes el 29 de noviembre de 2006.

Ciertamente, el TPI no acogió la solicitud de reconsideración ni tomó determinación alguna en su consideración, razón por la cual, el plazo para recurrir ante este foro apelativo no fue interrumpido. En tal caso, el término para los peticionarios recurrir en alzada comenzó a cursar desde que se les notificó la *Resolución* del 8 de noviembre de 2006, denegando su solicitud de relevo, es decir, desde el 15 de noviembre de 2006. Siendo ello así, ese terminó expiró el viernes 15 de diciembre de 2006. Presentado el recurso el 27 de diciembre de 2006, éste se presentó, pasados 12 días del término dispuesto para ello.

En consideración a que la presentación del recurso KLAN-2006-01669 se dio transcurridos 42 días de la notificación de la determinación recurrida y que en su escrito los peticionarios no exponen justificación alguna para su dilación, desestimamos el recurso por haber sido presentado fuera del término de cumplimiento estricto de treinta (30) días dispuestos por ley, sin existir justa causa para ello. Véase, Regla 53.1(e)(1) de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 53.1(e)(1); Reglas 32(D) y 83(C)(B)(2) del Reglamento del Tribunal de Apelaciones, **2004 JTS 112**, 4 L.P.R.A. Ap. XXII-B.

### Casos- KLAN-2006-01669 y KLAN-2006-01670

Como regla general, los tribunales deben resistirse a alterar sus pronunciamientos finales y firmes para no inquietar la estabilidad y certeza del derecho. *Piazza v. Isla del Río, Inc.*, 158 D.P.R. 440, 448 (2003); *Sánchez Ramos v. Troche Toro*, 111 D.P.R. 155, 157 (1981). La razón es que las sentencias dictadas por nuestros tribunales tienen a su favor una presunción de validez y corrección. *Cortés Piñero v. Sucesión A. Cortés*, 83 D.P.R. 685, 690 (1961). Sin embargo, mediante la Regla 49.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 49.2 (en adelante, Regla 49.2), el legislador implementó un mecanismo procesal disponible a las partes para solicitarle al foro de instancia el relevo de los efectos de una sentencia. R. Hernández Colón, *Derecho Procesal Civil*, San Juan, Ed. Michie de Puerto Rico, 1997, Secs. 4801-4803.

De la lectura de la Regla 49.2 se desprende que ésta autoriza relevar a una parte de una sentencia, orden o procedimiento por los fundamentos contemplados por dicho precepto, los cuales incluyen: error, inadvertencia,

sorpresa o negligencia excusable; descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48 de Procedimiento Civil; fraude o falsa representación; nulidad de la sentencia; cumplimiento, renuncia o revocación de la sentencia y cualquier otra razón que justifique la concesión de un remedio.

A pesar de que el mecanismo procesal disponible para solicitar el relevo de los efectos de una sentencia se interpreta liberalmente, el Tribunal Supremo de Puerto Rico (en adelante, TSPR) ha advertido que el mismo no constituye una llave maestra para reabrir controversias y que no debe ser utilizado en sustitución de los recursos de revisión o reconsideración. *Vázquez v. López*, 160 D.P.R. 714, 726 (2003); *Rivera v. Algarín*, 159 D.P.R. 482, 490 (2003); *Piazza v. Isla del Río, Inc.*, supra, a la pág. 448; *Reyes v. E.L.A. et al.*, 155 D.P.R. 799, 809 (2001); *Vega v. Emp. Tito Castro, Inc.*, 152 D.P.R. 79, 87 (2000); *Pagán v. Alcalde Mun. de Cataño*, 143 D.P.R. 314, 327 (1997); *Olmeda Nazario v. Sueiro Jiménez*, 123 D.P.R. 294, 299 (1989); *Figueroa v. Banco de San Juan*, 108 D.P.R. 680, 688 (1979); *González v. Chávez*, 103 D.P.R. 474, 476 (1975); *Ríos v. Tribunal Superior*, 102 D.P.R. 793, 794 (1974). En particular, el TSPR ha prevenido que la Regla 49.2 no debe ser utilizada para extender indirectamente los términos para acudir en alzada, pues ello atentaría contra la estabilidad y certeza de los procedimientos judiciales. *Reyes*, supra, a la pág. 811; *Pagán*, supra, a la pág. 328.

De otra parte, la Regla 49.2 dispone que la moción de relevo *"se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento"*. Véase además, *Piazza*, supra, a las págs. 447-448; *Pardo v. Sucn. Stella*, 145 D.P.R. 816, 831 (1998); *Rosario Rodríguez v. E.L.A.*, 122 D.P.R. 554, 555-556 (1988); *Sánchez Ramos v. Troche Toro*, 111 D.P.R. 155, 157-158 (1981). ■

Como hemos expresado, en el presente caso, las sentencias mediante las que se impuso responsabilidad a los peticionarios por las reclamaciones de los recurridos fueron dictadas en febrero de 2006. Cónsono a lo estipulado en los acuerdos transaccionales, los peticionarios no solicitaron la revisión de dichas determinaciones ante este foro apelativo; por lo que, a la fecha del registro y notificación de las sentencias, éstas advinieron finales, firmes y vinculantes. Sin embargo, mediante mociones al amparo de la Regla 49.2, los peticionarios comparecieron ante el TPI en solicitud de relevo de las sentencias, alegando que *"[l]as **circunstancias extraordinarias** que enmarcaron el llamado acuerdo transaccional que motivó la[s] sentencia[s]... y **la muerte del demandado** Don Miguel Ángel Oquendo el pasado 7 de junio de 2006 justifica y obliga -en nombre de la Justicia-, el relevo de la[s] referida[s] sentencia[s] al amparo de la Regla 49.2(6)"*. Tras denegárseles el relevo solicitado, los peticionarios comparecen ante nosotros invocando cuatro razones por las alegan procede que les relevemos de los efectos de las sentencias dictadas en su contra, a saber: (1) porque no hubo consentimiento válido en el acuerdo transaccional; (2) la referida sentencia se dictó sin la acumulación de parte indispensable; (3) no se satisfizo el debido proceso de ley, y (4) por la circunstancia extraordinaria de la muerte del demandado Miguel Oquendo Maldonado. No tienen razón. Veamos.

El Código Civil de Puerto Rico define la transacción como *"el contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado"*. 31 L.P.R.A. § 4821. Del texto anterior se colige que existen dos clases de contratos de transacción: el judicial y el extrajudicial. *Neca Mortg. Corp. v. A & W Dev. S.E.*, 137 D.P.R. 860, 870 (1995). En lo que nos concierne, el contrato de transacción judicial se configura cuando la controversia entre las partes tiene acceso a los tribunales y, luego de iniciado el pleito, éstas acuerdan finalizar la disputa, incorporar el acuerdo al proceso en curso y obtener la autorización del tribunal para que lo estipulado tenga carácter de cosa juzgada. 31 L.P.R.A. §§ 4821 y 4827; *Neca Mortg. Corp. v. A & W Dev. S.E.*, supra, a las págs. 870-871; *Citibank v. Dependable Ins. Co., Inc.*, 121 D.P.R. 503, 516 (1988).

Como todo contrato, la transacción tiene que cumplir con los requisitos esenciales para su formación: consentimiento de los contratantes, objeto cierto y causa de la obligación que establezcan las partes. 31 L.P.R.A.

§ 3391. De ordinario, el **consentimiento**, como elemento esencial de la contratación, se da cuando las dos declaraciones de voluntad recíprocas y sucesivas de los contratantes coinciden en el objeto y la causa del contrato, es decir, cuando hay concurso de la oferta y la aceptación. La oferta debe emitirse por el oferente con la intención de obligarse, contener todos los elementos esenciales del contrato y dirigirse a la persona con legitimación para aceptarla. La oferta, como declaración recepticia, debe ser susceptible de generar el contrato con la simple aceptación del destinatario. Ambas declaraciones deben ser **libres o voluntarias e informadas y serias** para surtir el efecto vinculante. *Producciones Tommy Muñiz, Inc. v. COPAN*, 113 D.P.R. 517, 522 (1982). El consentimiento "*presupone conocimiento del alcance del negocio y libertad para querer sus consecuencias.*" Por ello, si el consentimiento de una parte está viciado por la falta de información (por error o dolo) o de libertad (por intimidación o violencia), el contrato es anulable. 31 L.P.R.A. § 3404-3409.

En el caso que nos ocupa se alega que el consentimiento de la co-peticionaria, Sra. Aida Graulau, estuvo viciado por error. El Artículo 1218 del Código Civil establece que "*[p]ara que el error invalide el consentimiento, deberá recaer sobre la sustancia de la cosa que fuere objeto del contrato, o sobre aquellas condiciones de la misma que principalmente hubiesen dado motivo a celebrarlo*". 31 L.P.R.A. § 3405. Conforme a esta norma, cuando el motivo o la causa que induce al contratante a aceptar la transacción se basa en una premisa errónea, el contrato es anulable, siempre que el afectado, de haberse percatado del error, no hubiese celebrado el contrato. El error nunca se presume y **debe ser excusable**. *Capó Caballero v. Ramos*, 83 D.P.R. 650, 673 (1961). El error es excusable cuando la parte contratante que lo sufre, pudo haberlo evitado, mediante una diligencia razonable. Es decir, el error es inexcusable cuando la parte que lo sufre pudo evitar la equivocación sobre la razón que lo indujo a consentir, con sólo exhibir una diligencia normal u ordinaria en la atención de sus asuntos e intereses en el curso de la negociación. De lo anterior se deduce que la diligencia requiere valorar las circunstancias particulares del caso, incluso las personales.

Como hemos expresado en la relación de hechos, durante el trámite ante el TPI, los peticionarios realizaron actos de construcción y otorgaron escrituras que efectivamente pusieron fin a algunas de las reclamaciones de infraestructura realizadas por los recurridos. Así pues, luego de un prolongado proceso de negociación **supervisado por el TPI**, que se extendió desde el 3 de diciembre de 2004 ■ al 2 de febrero de 2006, **[5]** las partes presentaron conjuntamente ante el TPI tres distintos acuerdos de transacción y solicitud para que se dictara sentencia por estipulación en cada uno de los pleitos pendientes. Los acuerdos fueron acompañados por declaraciones juradas de las partes, en las que hicieron constar que **habían examinado y leído cuidadosamente las estipulaciones, las cuales adoptaron voluntariamente y fueron redactadas de conformidad a sus instrucciones**. El co-demandado Miguel Oquendo estuvo representado por su hija, arquitecta de profesión, lo que alude a la pericia de conocimientos en el desarrollo de la construcción.

Considerada dicha relación de eventos, resolvemos que en el caso que nos ocupa estamos ante una transacción judicial que cumple con todos los requisitos de los contratos en general. No hay duda de que la transacción acordada se concertó tras la celebración de un largo proceso de negociación entre las partes, que incluyó reuniones, inspecciones oculares y numerosos correos electrónicos entre sus representantes legales. Específicamente, esas comunicaciones (las cuales forman parte del apéndice del caso) reflejan el compromiso de los peticionarios de completar la infraestructura, conforme a los reclamos de los recurridos, y poner fin a los casos pendientes en su contra. Por ello, hiere el sentido de lo justo afirmar que no se perfeccionó el contrato de transacción por falta de consentimiento válido. Si hubo error en el consentimiento de la co-peticionaria, Sra. Aida Graulau, no fue excusable y no anula el contrato de transacción impugnado.

En cuanto al segundo señalamiento, en el que se aduce que las sentencias impugnadas se dictaron sin la acumulación de parte indispensable, basta con decir que la alegación es tardía por el efecto de finalidad del pleito que tiene la transacción judicial libremente acordada por las partes. De todas formas, la referida transacción judicial no afecta en nada el alegado interés común de la desarrolladora del proyecto.

Finalmente, en consideración a la cuarta alegación, que señala como circunstancia extraordinaria la muerte del co-demandado Miguel Oquendo, resolvemos que, a estas alturas del proceso, los peticionarios no pueden escudarse en la muerte de una de las partes, circunstancia posterior al proceso de transacción judicial, para disminuir su responsabilidad; más aún cuando: 1) en la litigación el control del interés personal del co-demandado Miguel Oquendo fue asumido por parte de su sucesión, su hija y apoderada Arquitecta Aida Oquendo Graulau, cuyo conocimiento formal se suma a las obligaciones de la buena fe y del proceder leal y honesto que se imponen a cualquier litigante durante el proceso judicial, y 2) el contrato de transacción expresamente provee que: *"[e]l presente acuerdo transaccional obliga a los demandantes, demandado, a todos los residentes de Quintas del Atlántico, **como a sus sucesores en derecho, familiares, herederos, albaceas, administradores, cesionarios y/o dependientes"**.* Dentro de las circunstancias mencionadas, la muerte de uno de los demandados, un evento posterior, no convierte en inoficiosa o nula las sentencias previamente dictadas, por lo que el error invocado no fue cometido.

## III

En mérito a los fundamentos que anteceden, se desestima el recurso KLAN-2006-01668 y se deniega la expedición de los autos de *certiorari* solicitados en los casos KLAN-2006-01669 Y KLAN-2006-01670.

El Juez Soler Aquino disiente sin opinión escrita.

Lo acuerda este Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones