## ESTADO LIBRE ASOCIADO DE PUERTO RICO
## TRIBUNAL DE APELACIONES
## PANEL ESPECIAL

| | | |
|---|---|---|
| **WILFREDO TORRES VÉLEZ**<br>Apelante<br><br>v.<br><br>**YESMARIE ARZOLA APONTE**<br>Apelado | KLAN202300973 | Recurso de apelación procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.<br>ECU 2015-0052<br><br>Sobre:<br>ALIMENTOS |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Juez Álvarez Esnard y la Jueza Prats Palerm[1].

Prats Palerm, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 22 de febrero de 2024.

El 31 de octubre de 2023, el demandante apelante, señor Wilfredo Torres Vélez (en adelante, ¨señor Torres¨ o ¨padre alimentante¨), presentó un Recurso de Apelación donde solicita la revisión de la *Resolución* dictada el 24 de agosto de 2023 por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, ¨TPI¨). De la misma se solicitó oportunamente reconsideración y fue denegada el 2 de octubre de 2023. Mediante la referida Resolución se fijó una pensión alimentaria por la cantidad de quinientos cincuenta y cuatro dólares con trece centavos ($554.13) mensuales a ser pagada por el señor Torres en beneficio de sus dos (2) hijos menores de edad, efectivo el 13 de junio de 2023. Señala el señor Torres que el tribunal incidió al acoger las

---

[1] Mediante Orden Administrativa OATA-2023-212 de 6 de diciembre de 2023, se designa a la Hon. Annette M. Prats Palerm en sustitución de la Hon. Karilyn M. Díaz Rivera.

recomendaciones de la Examinadora de Pensiones Alimentarias (en adelante, ¨EPA¨) sin tomar en consideración el beneficio del seguro social que reciben sus hijos, producto del padre alimentante haber sido declarado incapaz.

Por los fundamentos que expondremos a continuación se *Modifica* la Resolución del TPI y así modificada se *Confirma*.

Examinemos los hechos que dieron lugar a la presente controversia.

## I.

La señora Yesmarie Arzola Aponte (en adelante, ¨señora Ayala¨ o ¨madre alimentista¨) y el señor Torres procrearon dos hijos durante una relación consensual, WMTA, nacida el 8 de octubre de 2003 y SJTA, nacido el 15 de abril de 2008. El 11 de septiembre de 2017, el TPI expidió una *Resolución* en la cual estableció que la custodia de los menores sería compartida entre ambos progenitores. Subsiguientemente, el 20 de junio de 2018, el TPI, mediante *Resolución*, acogió las recomendaciones de la EPA, y fijó los alimentos en beneficio de ambos menores en trecientos treinta y ocho dólares ($338.00) mensuales.

Poco tiempo después, el 22 de agosto de 2018, el padre alimentante sufrió un accidente de motora que lo dejó incapacitado. Como consecuencia, la Administración del Seguro Social (en adelante, ¨ASS¨) lo declaró incapaz el 6 de abril de 2021. La ASS le concedió un monto de dinero retroactivo desde abril de 2019 y un pago mensual de mil ciento ochocientos setenta y nueve dólares ($1,879.00). Con relación a sus hijos menores de edad, la ASS le notificó el 20 de abril de 2021, que recibirían un pago de once mil novecientos noventa y dos dólares ($11,992.00), cada uno, en concepto de retroactivo desde abril de 2019 y que, cada uno comenzaría a recibir una cantidad mensual de cuatrocientos sesenta y nueve dólares ($469.00).

Desde el 30 de abril de 2021, el padre alimentante había pagado la cantidad mensual de trecientos treinta y ocho dólares ($338.00) en concepto de alimentos para el beneficio de sus hijos a través de la Administración para el Sustento de Menores (ASUME).

Así las cosas, el 8 de octubre de 2021 la hija, WMTA, cumplió 18 años y cesó de obtener el pago de cuatrocientos sesenta y nueve dólares ($469.00) mensuales de la ASS. Acto seguido, el 17 de noviembre de 2021 la ASS aumentó el monto mensual que recibía el hijo, SJTA, a novecientos noventa y nueve dólares ($939.00) mensuales. Para el 19 de enero de 2022 la ASS aumentó aún más la cantidad mensual recibida por SJTA a novecientos noventa y cinco dólares ($995.00).

La señora Ayala solicitó ante el TPI, Sala Superior de Caguas, la revisión de los alimentos obtenidos por sus hijos menores de edad para el 11 de junio de 2022.

Comenzando el 18 de enero de 2023, la madre alimentista empezó a recibir mil ochenta y un dólares ($1,081.00) mensuales de la ASS en beneficio de su hijo, SJTA.

Como parte del proceso de revisión de la pensión alimentaria, el 27 de abril de 2023 se celebró la primera vista de revisión de alimentos ante la EPA. Durante la celebración de la vista, el padre alimentante solicitó que se le acreditaran los beneficios recibidos del seguro social por ambos hijos en los cómputos de la pensión alimentaria. De igual manera, el señor Torres solicitó que se tomara en consideración el horario extendido de las relaciones paterno-filiales, ya que entre las partes existe un acuerdo de custodia compartida. Luego de celebrada la vista, la EPA procedió a hacer sus recomendaciones. Como parte de sus determinaciones, esta menciona que el señor Torres recibe los beneficios de ASS. No obstante, nada menciona de los beneficios recibidos por sus hijos menores de edad de la ASS. A su vez, recomendó la cantidad de

quinientos cuarenta y nueve dólares con treinta y siete centavos ($549.37) mensuales de manera provisional. Posteriormente, el 9 de mayo de 2023, el TPI notificó mediante resolución que estaría adoptando las recomendaciones de la EPA.

Una segunda vista de seguimiento fue celebrada ante la EPA el 16 de agosto de 2023. Finalmente, la EPA recomendó que se fijara una pensión alimentaria final de quinientos cincuenta y cuatro dólares con trece centavos ($554.13) mensuales. El 24 de agosto de 2023 el TPI adoptó mediante *Resolución* la recomendación de la EPA, efectivo desde el 13 de junio de 2022 el pago de quinientos cincuenta y cuatro dólares con trece centavos ($554.13) mensuales.

Así, pues, el 30 de agosto de 2023 el padre alimentante presentó ante el TPI una *Moción de Reconsideración* a la Resolución. El 2 de octubre de 2023 el TPI declaró No Ha Lugar la misma.

Inconforme, el padre alimentante presentó, el 31 de octubre de 2023, un recurso de *Apelación* solicitando que se revoque la resolución del TPI que adoptó las recomendaciones de la EPA. Al mismo tiempo, solicita que al pautar la pensión alimentaria se tome en consideración el dinero que los menores han recibido de la ASS, mientras que, a su vez, el señor Torres ha estado pagando la pensión alimentaria a través de ASUME. Adicionalmente, solicita que se ajuste la obligación de proveer alimentos considerando el horario extendido de las relaciones paterno-filiales por existir custodia compartida entre los progenitores. Como último pliego, solicita ser relevado del pago de la pensión alimentaria, ya que el dinero recibido por el menor, SJTA, de la ASS ($1,081.00 mensuales) excede el monto establecido para la pensión alimentaria ($554.13 mensuales). Conforme surge de su petición, el padre alimentante hizo los siguientes señalamientos de error:

> Erró el TPI al adoptar las recomendaciones de la EPA, al no aceptar que el dinero que sus hijos reciben de la ASS y de su padre alimentante, surgen de la misma persona o fuente: su padre, por lo que el alimentante tiene un crédito.

Erró el TPI al adoptar las recomendaciones de la EPA, quien con conocimiento de que los menores recibieron, y aún reciben dinero de la ASS, impone pensión alimentaria a padre por ambos hijos menores de edad procreados por los mismos progenitores e ignora el dinero que los menores recibieron/reciben de la ASS.

Erró el TPI al adoptar las recomendaciones de la EPA, al no conceder crédito al padre alimentante por el horario de las relaciones paterno-filiales al haber custodia compartida.

El Tribunal de Apelaciones emitió una *Resolución* el 8 de noviembre de 2023 para que la parte apelada expusiera su posición.

El 27 de noviembre de 2023 la señora Ayala presentó una *Moción en Cumplimiento de Orden.* En su somera oposición a la expedición del recurso apelativo indicó estar de acuerdo con la determinación del TPI sin más fundamentos.

Con el beneficio de la comparecencia de las partes, procedemos a exponer el derecho aplicable a la controversia que nos ocupa.

## II.

### A. Derecho de Alimentos

Entre los deberes principales de la patria potestad se encuentra el deber de proveer alimentos a los hijos. Esta obligación de los padres y el derecho de los hijos menores de edad a reclamar sus alimentos es parte esencial del derecho constitucional a la vida. Este deber y derecho constitucional, que a su vez está revestido del más alto interés público, que no es otro que el mejor bienestar del menor, está ampliamente resguardado en los artículos 653 al 680 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 7531 a la 7582 y en la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como la Ley Orgánica de la Administración para el Sustento de Menores, 8 L.P.R.A. sec. 501 *et. seq.,* [en adelante, "Ley para el Sustento de Menores"]. Véase, *Maldonado v. Cruz,* 161 D.P.R. 1, 12-13 (2004); *Martínez v. Rodríguez,* 160 D.P.R. 145, 145 (2003); *Ríos Rosario v. Vidal Ramos,* 134 D.P.R. 3, 7 (1993).

Se entiende por alimentos todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia. Los alimentos comprenden también la educación e instrucción del alimentista, cuando es menor de edad. Artículo 653 del Código Civil, 31 L.P.R.A. sec. 7531.

A su vez, la obligación de brindar alimentos a los menores de edad surge de la relación paterno-filial que se origina en el momento en que la paternidad o maternidad quedan establecidas. *McConnell v. Palau,* 161 DPR 732, (2004). Cónsono con lo anterior, la obligación de proveer alimentos recae sobre ambos progenitores, como parte de la patria potestad y custodia. Artículo 590 del Código Civil, 31 L.P.R.A. 7242.

La obligación de proveer alimentos deberá regirse por el principio de proporcionalidad. Es decir, la cuantía de los alimentos será proporcional a los recursos del que los brinda y a las necesidades del que los recibe, y se reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo. Artículo 665 del Código Civil, 31 L.P.R.A. 7561. En *Llorens Becerra v. Mora Monteserín,* 178 DPR 1003 (2010), se enfatizó que la determinación de la cuantía de alimentos corresponde al prudente arbitrio del juzgador, quien debe velar por que la cuantía que se establezca cumpla con el principio de proporcionalidad.

Por otro lado, la pensión alimentaria estará sujeta a ajuste y podrá modificarse ante un cambio sustancial en las circunstancias personales del alimentante o del alimentista. Artículo 19(c) de la *Ley Orgánica de la Administración Para el Sustento de Menores,* 8 LPRA sec. 518(c); *Figueroa v. Del Rosario*, 147 DPR 121, 128 (1998). En aquellos casos en los que el alimentante solicite un ajuste en la pensión alimentaria basado en la cantidad de tiempo que se relaciona con el alimentista, se deberán seguir las *Guías mandatorias para computar las pensiones alimentarias en Puerto*

*Rico* (Guías mandatorias) *establecidas* por ASUME. Ante una solicitud de reducción de la pensión alimentaria, el alimentante tendrá el peso de la prueba para demostrar que ha ocurrido un cambio sustancial en las circunstancias que estaban presentes al fijarse la pensión. *McConnell v. Palau, supra.* El efecto del ajuste de la pensión alimentaria será prospectivo. A tales efectos, el Artículo 19(b) de la Ley de ASUME, 8 L.P.R.A. § 518(b), dispone que:

> *Los pagos por concepto de pensiones alimentarias y de aumentos en las mismas serán efectivos desde la fecha en la que se presente en el tribunal o en ASUME, la petición de alimentos o la petición de aumento de pensión alimentaria. Bajo ninguna circunstancia el tribunal, el Administrador o el Juez Administrativo reducirán la pensión alimentaria sin que el alimentante haya presentado una petición a tales efectos, previa notificación al alimentista o acreedor. <u>La reducción de la pensión alimentaria será efectiva desde la fecha en que el tribunal, el Administrador o el Juez Administrativo **decida sobre la petición de reducción** o el Administrador modifique la pensión establecida conforme al reglamento de revisión periódica que se adopte para los casos en los que los menores alimentistas son beneficiarios de asistencia pública. [...].</u> Además, <u>no estará sujeta a **reducción retroactiva** en Puerto Rico ni en ningún estado, excepto que en **circunstancias extraordinarias** el tribunal o el Administrador podrán hacer efectiva la reducción a la fecha de la notificación de la petición de reducción al alimentista o acreedor o de la notificación de la intención de modificar, según sea el caso. No se permitirá la reducción retroactiva del monto de la deuda por concepto de las pensiones alimentarias devengadas y no pagadas. [...]</u>* (Énfasis suplido).

Sobre el mencionado artículo, el Tribunal Supremo ha reiterado que, de ordinario, los alimentos se adeudan desde el momento en que se solicitan. *Vázquez Ortiz v. López Hernández,* 160 DPR 714, 727 (2003). Por excepción, una modificación, ajuste o relevo de deuda o de pensión, tendrá efectividad prospectiva únicamente en casos extraordinarios de enfermedad, hospitalización, inconsistencia, o cualquier otro evento constitutivo de fuerza mayor o caso fortuito. *Id.* En ese sentido, el Tribunal Supremo ha expresado que:

> "[L]os tribunales de instancia deben de abstenerse de intervenir con el monto de las pensiones alimenticias devengadas con anterioridad a la fecha de radicación de las solicitudes de rebaja de pensión alimenticia, excepto en aquellas *situaciones extraordinarias* en que el alimentista

pueda demostrar —en adición a la procedencia de la rebaja propiamente— que por razón de una enfermedad o accidente de índole incapacitante estuvo realmente imposibilitado de radicar a tiempo la moción de rebaja correspondiente". *Ex Parte Valencia,* 116 DPR 909, 916-917 (1986).

**B. Ley de Sustento de Menores**

En aras de proteger el derecho de los menores a recibir alimentos, se aprobó la Ley Núm. 5 de 30 de diciembre de 1986. Ley Especial de Sustento de Menores, según enmendada. 8 LPRA sec. 501 *et seq.* El propósito de dicha ley es "...procurar que los padres o las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de sus hijos o dependientes mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de la pensión alimentaria." 8 L.P.R.A. sec. 502.

Nótese que en Puerto Rico se computa la pensión alimentaria conforme dispone la Ley para el Sustento de Menores, que en su artículo 2, inciso (16), define "ingresos" como "cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales [...] **o compensación derivados de cualquier procedencia, incluyendo** compensaciones como contratista independiente, compensaciones por desempleo, **compensaciones por incapacidad**, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica". 8 L.P.R.A. sec. 501; (énfasis nuestro). La definición de ingresos se refiere particularmente a los beneficios o ganancias que reciba el alimentante o padre no custodio que tiene la obligación de pagar una pensión alimentaria. Esta disposición no deja duda en cuanto a que es el alimentante quien debe recibir la ganancia o el beneficio que se considere a la hora de establecer su ingreso, lo que permitirá a su vez determinar el monto de la pensión conforme al principio de proporcionalidad entre los recursos del

alimentante y las necesidades del alimentista. *Torres Rodríguez v. Carrasquillo Nieves,* 177 D.P.R., en las pág. 751-752.

La obligación de proveer alimentos a los hijos menores de edad recae en ambos progenitores de forma proporcional a sus recursos y a las necesidades de estos.

En el 2013, en el recurso *Vázquez Acevedo, et als. v. Torres Lozano,* KLAN201300083, un Panel Hermano de este Tribunal favoreció al padre alimentante declarado incapaz en una controversia similar a la que tenemos ante nuestra consideración. En el referido recurso, nuestro Panel Hermano dispuso mediante *Sentencia* que en los casos en que un alimentista reciba los beneficios del seguro social federal por la incapacidad del padre no custodio **corresponde acreditar retroactivamente la cantidad recibida del seguro social al monto correspondiente a la pensión alimentaria y no el exceso en los casos en que el beneficio sea superior a la obligación alimentaria**. (Énfasis suplido).

Por otro lado, la Ley de Sustento de Menores provee para un procedimiento expedito que permite procurar de los padres, o personas legalmente responsables, su contribución a la manutención de los menores a través de la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de las pensiones alimentarias. 8 L.P.R.A. sec. 502. Mediante el procedimiento expedito, un Examinador de Pensiones Alimentarias podrá recomendarle al tribunal la fijación de una pensión provisional.

De igual manera, la Ley de Sustento de Menores le asigna a los EPA la facultad expresa de hacer determinaciones de hechos y conclusiones de derecho y recomendar remedios al Juez en casos de alimentos y filiación. 8 L.P.R.A. sec. 512. Una vez el EPA somete al Tribunal sus determinaciones de hechos, sus conclusiones de derecho y su recomendación sobre el monto de la pensión, éste

puede acogerlas o hacer las suyas propias, con o sin vista previa y emitir la orden, resolución o sentencia que corresponda. 8 L.P.R.A. sec. 517(5); *Caro v. Cardona*, 158 D.P.R. 592, 603-604 (2003).

Para lograr cumplir con su propósito, la Ley de Sustento de Menores le concede la facultad al EPA de tomar juramentos y dirigir y permitir que las partes se envuelvan en el descubrimiento de información que agilice el procedimiento y la resolución de las controversias y recibir testimonio y cualquier otra evidencia, así como para establecer un récord del caso. 8 L.P.R.A. 517(1)(2).

### C. Social Security Act

Los hijos de las personas declaradas incapaz bajo el *Social Security Act* tienen derecho a recibir un beneficio económico. 42 U.S.C. sec. 402. En ese sentido, los hijos menores que reciben un beneficio económico bajo esta Ley son considerados como beneficiarios de los fondos que reciben sus padres al amparo del *Social Security Act.*

Asimismo, el beneficio del seguro social que reciben los hijos menores dependientes por la incapacidad del padre alimentante puede acreditarse a la obligación del padre no custodio de proveer una pensión alimentaria. *Martínez v. Rivera Hernández*, 116 D.P.R. 164 (1985), reiterado en *Torres Rodríguez v. Carrasquillo Nieves*, *supra.* En nuestro sistema judicial el pago de los beneficios del Seguro Social a un menor dependiente de un alimentante satisface la obligación del alimentante de proveer, en todo o en parte, una pensión alimentaria. Se trata de un método de pago válido. *Martínez v. Rivera Hernández, supra.* En otras palabras, nada impide que el alimentante pueda satisfacer una pensión alimentaria, parcial o totalmente, a través del pago directo al alimentista de una pensión proveniente del seguro social. *Véase,* Ruth E. Ortega Vélez, *La protección jurisdiccional del menor con ocasión del divorcio de los padres: La cuestión jurídica.*, Ediciones Situm, 1996, a la pág. 154.

El beneficio que provee el seguro social a los hijos menores es producto de los ingresos que generó el padre alimentante durante su vida laboral. En otras palabras, los beneficios que reciben los hijos menores por incapacidad de sus padres son producto de los ingresos que el padre alimentante generó cuando trabajaba. Así las cosas, este hecho se utiliza como fundamento para acreditar el beneficio de los hijos menores a la obligación del padre alimentante incapacitado. *Torres Rodríguez v. Carrasquillo Nieves, supra.* Como condición para que proceda el crédito, el padre alimentante deberá recibir junto a sus hijos menores el beneficio por incapacidad del seguro social para que sea posible sustituir los beneficios del seguro social por la pensión alimentaria. *Id.* Solamente así se justifica la acreditación de dicho beneficio a la pensión alimentaria, al imputarse como ingreso del alimentante. *Id.*

En *Davis v. Davis*, 780 N.W.2d 707 (2010), de la Corte Suprema de Dakota del Norte, se dieron hechos similares al caso que hoy consideramos. Un padre alimentante cumplía con su pensión alimentaria al pie de la letra, pero tras una lesión en su trabajo aplicó y recibió los beneficios de incapacidad bajo el *Social Security Act*. Eventualmente, la Administración del Seguro Social le pagó a sus dos (2) hijos menores $23,582.00 como retroactivo (cubría desde el día en que el alimentante solicitó el beneficio, hasta que finalmente se le aprobó). A raíz de ello, el padre alimentante incoó una acción judicial contra su exesposa y madre de los menores para recobrar el dinero que presuntamente pagó en exceso de pensión alimentaria durante la pendencia de su solicitud de incapacidad. Alegó que dichos desembolsos constituyeron un sobrepago de su obligación luego de que los menores recibieron los beneficios del seguro social como pensión alimentaria bajo el N.D. Admin. Code § 75–02–04.1–02(11). Tras varios trámites, la Corte Suprema ordenó el reembolso de $15,727.97, más intereses al padre

alimentante por este pagar en exceso la pensión. Esta cantidad correspondía a los pagos de pensión alimentaria hechos desde enero 2004 hasta febrero 2007, pensión subsecuentemente sustituida por la suma global de retroactivo que recibieron sus hijos menores de edad bajo la Administración del Seguro Social.

Por otro lado, La Corte de Apelaciones del estado de Ohio en *Hamilton v. Reynolds*, 5 N.E.3d 1053 (2013) enfrentó la controversia de si un progenitor no custodio que se mantuvo al día en su obligación alimentaria merecía un reembolso luego de que el alimentista recibió una suma global del seguro social cubriendo el mismo período de tiempo en que el alimentante pagó la pensión alimentaria. Sobre este particular se estableció lo siguiente, citando a *Paulhe v. Riley*, 722 N.W.2d 155 (2006):

> "The paramount goal of child support is to promote the best interests of children and to avoid financial hardship to children of divorced parents. If we were to limit a payor's credit entitlement to only situations of "unpaid support," we would encourage disabled payors who nonetheless have the ability to pay support, to terminate child support payments in anticipation that potential future social security disability payments will eventually make up the shortfall. That would leave the child without child support during this interim, a result clearly contrary to the public policy underpinning child support. To his credit, [the obligor] did not take this route. Instead, he honored his child support obligations. As a result, he is now rightfully entitled to credit against those payments based on the social security disability payments that he funded by his earnings while working."

La Corte de Apelaciones confirmó al foro de instancia y determinó que el padre alimentante pagó en exceso su obligación alimentaria por un periodo de tiempo, por lo que era acreedor de un reembolso por parte de la madre custodio de sus hijos.

### III.

La controversia planteada en el presente recurso se trata de determinar si un padre alimentante es acreedor de algún crédito o reembolso luego que su hijo alimentista recibiera un retroactivo del seguro social de dicho alimentante, que precisamente cubrió su

obligación alimentaria durante el mismo período de tiempo que mantuvo sus pagos de pensión al día.

En el primer y segundo señalamiento de error, el señor Torres, en síntesis, alega que el TPI incidió al adoptar las recomendaciones de la EPA. Alega que se debió tomar en consideración que el dinero que sus hijos reciben de la ASS y de la pensión alimentaria surgen de la misma fuente, su padre. Bajo estos fundamentos, el señor Torres reclama que tiene un crédito a su favor.

Además, el señor Torres destaca que durante las vistas celebradas ante la EPA sus reclamos respecto a que se tomara en consideración los beneficios de la ASS recibidos por él y sus hijos fueron ignorados. Alega que incidió la EPA, y a su vez el TPI, al no tomar en consideración todos los ingresos devengados por el padre alimentante, conforme a lo dispuesto en la Ley para el Sustento de Menores.

En el caso ante nuestra consideración, mediante la *Resolución* del 24 de agosto de 2023 el foro apelado acogió las recomendaciones de la EPA. No surge de la Resolución que el foro primario haya considerado el beneficio de la ASS recibido por los menores, SJTA y WMTA, en concepto de la incapacidad del señor Torres. Solo se hace una somera mención de que el padre no custodio recibe los beneficios del Seguro Social, sin más.

Debemos destacar que el beneficio que provee el seguro social a los hijos menores de edad es producto de los ingresos que generó el padre alimentante durante su vida laboral. Debido a esto, los menores, WMTA y SJTA, han recibido un doble pago proveniente de la misma fuente, el señor Torres, al recibir los beneficios de la ASS y el pago de la pensión alimentaria, constituyendo un enriquecimiento injusto.

El monto que actualmente recibe el menor, SJTA, de la ASS ($1,081.00 mensuales) es mayor a la pensión alimentaria impuesta

por el TPI en beneficio de SJTA y WMTA ($554.13 mensuales). De igual manera, previo a que WMTA cumpliera 18 años y dejara de recibir los beneficios del seguro social, ambos menores recibían de la ASS una cantidad mayor ($469.00 mensuales, cada uno) a la pensión alimentaria vigente a la fecha ($338.00 mensuales).

Tenemos que puntualizar que con respecto al menor SJTA, la pensión actualmente está siendo cubierta por los beneficios que recibe de la ASS, aún cuando recibe una cuantía en exceso. Sin embargo, ese exceso no se puede utilizar en beneficio del otro menor WMTA, quien ya cesó de recibir los beneficios de la ASS por haber cumplido sus 18 años. Con relación a WMTA, le corresponderá al TPI hacer el correspondiente cálculo de cuánto procedería recibir de pensión alimentaria para su beneficio. Ello aún cuando la cantidad que recibe SJTA por la ASS es en exceso de lo que sería la pensión permanente total, pero no puede adjudicarse en beneficio de WMTA.

Concluimos que hubo aspectos procesales que el TPI no tomó en consideración al momento de emitir su determinación. Con relación a los errores primero y segundo, el TPI actuó correctamente al imponer una pensión alimentaria conforme la Ley para el Sustento de Menores y ordenar a ASUME a que realice la correspondiente conciliación y auditoría de las cuentas del señor Torres, para que así determine la procedencia de los fondos que cubren el pago de pensión alimentaria. No hacerlo podría dejar desprovisto al peticionario de que no le vaya a aparecer una deuda ya que el beneficio por ASS no entra directamente por ASUME.

En el tercer señalamiento de error, el señor Torres alega que el TPI debió haberle concedido un crédito proporcional al tiempo en que se relaciona con sus hijos menores de edad. Esta reclamación surge en base a que existe un acuerdo de custodia compartida entre las partes. Sobre dicha solicitud de crédito, nada se menciona en el informe de la EPA, ni en la Resolución del TPI.

Coincidimos con el señor Torres al destacar que al fijar la pensión alimentaria se debe tener en cuenta el tiempo que los menores se relacionan con cada padre. No obstante, procedería devolver dicha controversia ante el TPI para que las partes tengan la oportunidad de presentar prueba en apoyo a sus alegaciones y celebrar la correspondiente vista evidenciaria.

Por lo anterior, se modifica la Resolución emitida por el TPI y así modificada se confirma. Se ordena la continuación de los procedimientos ante el TPI conforme lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones